KATHY A.F. DAVIS (4022)
ROGER R. FAIRBANKS (3792)
K. TESS DAVIS (15831)
JAKE M. GARFIELD (15603)
Assistant Attorneys General
Utah Attorney General's Office
MARK BOSHELL (16002)
Special Assistant Attorneys General
SEAN D. REYES (7969)
UTAH ATTORNEY GENERAL
1594 West North Temple, Suite 300
Salt Lake City, Utah 84116
kathydavis@agutah.gov
rfairbanks@agutah.gov
kaitlindavis@agutah.gov
jgarfield@agutah.gov
mboshell@utah.gov

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| THE STATE OF UTAH, including the UTAH SCHOOL AND INSTITUTIONAL TRUST LANDS ADMINISTRATION (SITLA), an agency of the State of Utah; WAYNE COUNTY, a Utah political subdivision, and GARFIELD COUNTY, a Utah political subdivision,<br><br>        Plaintiffs,<br><br>vs.<br><br>DEB HAALAND, in her official capacity as SECRETARY OF THE INTERIOR; the DEPARTMENT OF THE INTERIOR, an agency of the United States of America; CHARLES SAMS, in his official capacity as DIRECTOR OF THE NATIONAL PARK SERVICE; the NATIONAL PARK SERVICE, an agency of the United States of America; MICHELLE KERNS, in her official capacity as SUPERINTENDENT OF THE GLEN CANYON NATIONAL RECREATION AREA,<br><br>        Defendants, | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**Case No. _____** |

Plaintiffs the State of Utah, including the Utah School and Institutional Trust Lands Administration (SITLA), Wayne County, and Garfield County, by and through counsel, hereby file this Complaint for Declaratory and Injunctive Relief against Defendants Deb Haaland, in her official capacity as Secretary of the U.S. Department of the Interior (DOI); the DOI; Charles Sam, in his official capacity as the Director of the U.S. National Park Service (NPS); the NPS; Michelle Kerns, in her official capacity as Superintendent of the Glen Canyon National Recreation Area, (GCNRA); and the GCNRA. Plaintiffs allege as follows:

## INTRODUCTION

1.      This legal action challenges the off-road vehicle (ORV) and street-legal all-terrain vehicle (ATV) restrictions and road closures established by Defendants' approval of the Glen Canyon Off-Road Vehicle Management Plan/Final Environmental Impact Statement ("ORV Plan"), the associated Record of Decision ("ROD"), and the adoption of the ORV Plan via special regulation, 36 C.F.R. § 7.70(f), 86 Fed. Reg. 3804 (Jan. 15, 2021) ("Final Rule"). The ORV Plan, ROD, and Final Rule authorize ATV and OHV use on some unpaved roads in the GCNRA but prohibit their use for most roads in the Orange Cliffs Unit, including: (1) Spur Road, Wayne County B Road 120; (2) Roost Road, Wayne County B Road 114; (3) Flint Trail Road, Garfield County B Road 0230, to the North and East of the  intersection with Poison Springs/North Hatch Canyon Road, Garfield County B Road 0011D; and (4) Big Ridge Road, Garfield County B Road 0306.  A copy of the Final Rule is attached hereto as EXHIBIT A and incorporated in this complaint.  A Copy of the Defendants' map depicting roads in the Orange Cliffs Unit is attached as EXHIBIT B and incorporated in this complaint.

2.      These ATV and ORV prohibitions also result in a *de facto* prohibition of ATV and ORV use on Windy Peak Road, Wayne County B Road 120A, which lies entirely on BLM land west of the GCNRA but can only be accessed from Spur Road within the GCNRA.

Windy Peak Road provides exclusive access to a parcel of land owned by the State of Utah and managed by SITLA: Section 32 of Township 27 South, Range 16 East.

3.      These ATV and ORV prohibitions also result in a *de facto* prohibition of ATV and ORV use on Spur Trail Road, Wayne County D Road 120_5, which lies entirely on BLM land west of the GCNRA but can only be accessed from Spur Road within the GCNRA.  Spur Trail Road provides exclusive access to a parcel of land owned by the State of Utah and managed by SITLA: Section 36 of Township 26 South, Range 16 East in Emery County.

4.      The ORV Plan, ROD and Final Rule fail to recognize and therefore render closed three Wayne and Garfield County D Roads, including: (1) High Spur Road, Wayne County D Road 120_1; (2) Gordon Flat Road, Wayne County D Road 114_19; and (3) Sewing Machine Road, Garfield County D Road GC16052.

5.      High Spur Road and Gordon Flat Road provide exclusive access to two sections of land owned by the State of Utah and managed by SITLA: (1) Section 32 in Township 28 South, Range 13 East; and (2) Section 16 in Township 30 South, Range 16 East.  The closure of these roads deprives Plaintiffs of access to these state-owned lands.

6.      Plaintiffs SITLA and Wayne County are working toward leasing and opening parcels of land owned by the State of Utah and managed by SITLA in Section 16, Township 30 South, Range 16 East to be used as sand and gravel pits for road maintenance purposes in eastern Wayne and Garfield Counties. To this end, SITLA and Wayne County have issued and executed three Sand and Gravel Permits — 699, 701, and 702 — copies of which are attached hereto as EXHIBIT C. The counties maintain many roads in the area, including roads in the GCNRA, and nearby sand and gravel pits would provide a needed source of road material, eliminating the extremely high cost of trucking in material from the distant western areas of the counties, as

3

well as providing revenue for Utah schools.

7.      The only means of access for the proposed sand and gravel pits would be from Roost Road and Gordon Flat Road in the GCNRA.

8.      Sewing Machine Road continues west of the GCNRA in Section 33 of Township 32 South, Range 15 East, and is used by cattle ranchers to access a large stock pond. The Road also provides the only potential access to two nearby sections of land owned by the State of Utah and managed by SITLA just west of the boundary of the GCNRA.

9.      The State of Utah, Wayne County, and Garfield County hold valid existing R.S. 2477 rights-of-way to the roads within the Orange Cliffs Unit of the National Recreation Area, including rights-of-way for all of the roads referenced in paragraphs 1 through 6 above, which are currently the subject of quiet title actions before this court in *Wayne County et. al. v. U.S.A. et. al.* 2:12-cv-00434, and *Garfield County, et. al. v. U.S.A. et. al*. 2:12-cv-00478.  Maps of the Orange Cliffs Area and adjacent land depicting roads referenced in paragraphs 1 through 6 above, together with photographs of some of the roads, are attached as EXHIBIT D and incorporated in this complaint.

10.     Defendants are legally required to recognize and acknowledge Plaintiffs' legal right to R.S. 2477 rights-of-way within the Orange Cliffs Unit of the National Recreation Area, including the right to designate such rights-of-way as open to all forms of vehicular travel.

11.     Plaintiffs allege that Defendants' ATV and ORV restrictions and road closures in the Orange Cliffs Unit, which lack adequate explanation as required by National Park Service (NPS) regulations, are *ultra vires*, arbitrary and capricious, and a violation of federal and state law.

12.     Plaintiffs ask this Court to find the Defendants' actions unlawful; to enjoin

implementation of the ORV Plan, ROD and Final Rule as they relate to the ATV and ORV restrictions and road closures in the Orange Cliffs Unit; and to direct Defendants to open the closed roads, allow ATV and ORV use on all roads within the Orange Cliffs Management Unit, and manage the traffic and vehicle use within the recreation area in accordance with state law, as provided in NPS regulations.

## JURISDICTION AND VENUE

13.     This Court has jurisdiction under 28 U.S.C. § 1331 [federal question], 28 U.S.C. § 2201 [declaratory judgment], 28 U.S.C. § 1361 [mandamus], and the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706. The claims asserted herein arise under the U.S. Constitution's separation of powers doctrine; the National Environmental Policy Act (NEPA), 42 U.S.C. § 4332(2)(C); and the APA, 5 U.S.C. § 706.

14.     Judicial review of Defendants' actions is also available under the doctrine of non-statutory judicial review of agency action because Defendants have acted without statutory authority and *ultra vires*.

15.     The Administrative Procedure Act (APA) also authorizes judicial review of Defendants' actions because Defendants have acted contrary to law and without lawful authority, 5 U.S.C. § 706(2)(c), arbitrarily, capriciously, and not in accordance with law. 5 U.S.C. § 706(2)(A).

16.     An actual, justiciable controversy now exists between Plaintiffs and Defendants. The requested relief is therefore proper under 28 U.S.C. §§ 2201-2202 and 5 U.S.C. §§ 701-06.

17.     Venue is proper under 28 U.S.C. § 1391(e), as the lands, which are the subject of this case, are located in Utah.

## PARTIES

18.     Plaintiff State of Utah is one of fifty sovereign states forming the United States of America, having been admitted to the Union on January 4, 1896, on an equal footing with the original states. The executive power of the State is vested in the Governor, who is responsible for seeing that the laws of the State are faithfully executed. Utah Const. art. VII, § 5; UTAH CODE ANN. § 67-1- 1.

19.     Plaintiff SITLA, as an agency of the State of Utah, administers and manages lands owned by the State for the benefit of Utah's public school system. The roads referred to in paragraphs 1 through 6 above provide access to six sections of land owned by the State and managed by SITLA that are located just outside the boundaries of the GCNRA.

20.     Plaintiff Wayne County is a political subdivision of the State of Utah and is duly vested with governmental power and authority to provide for and protect the public health, safety, and welfare of its citizens and those who travel county roads within its boundaries. The Wayne County Roads referenced in paragraphs 1 through 6 above lie within the boundaries of the county and within parts of the Glen Canyon National Recreation Area located within the county.

21.     Plaintiff Garfield County is a political subdivision of the State of Utah and is duly vested with governmental power and authority to provide for and protect the public health, safety, and welfare of its citizens and those who travel county roads within its boundaries. The Garfield County roads referenced in paragraphs 1 through 6 above lie within the boundaries of the county and within parts of the Glen Canyon National Recreation Area located within the county.

22.     Defendant DOI is the department of the federal government to which Congress delegated the authority to administer the public lands in accordance with the Constitution of the United States and federal law.

23.     Defendant Deb Haaland is the Secretary of the DOI. In her official capacity, the Secretary is responsible for upholding the Constitution of the United States and for setting public land policy in accordance with the provisions and requirements of federal law.

24.     Defendant National Park Service is the federal agency within DOI responsible in part for the management of national recreation areas, including the GCNRA.

25.     Defendant Charles Sams is the director of the National Park Service. In his official capacity, he is responsible for managing the national parks in accordance with the U.S. Constitution and federal law.

26.     Defendant Michelle Kerns is the Superintendent of the GCNRA and is responsible for day-to-day implementation of planning and activities and ensuring that the Park Service's management of activities within the GCNRA complies with applicable laws. She is sued solely in her official capacity, for her actions as an employee within the National Park Service, a division of DOI.

## STATEMENT OF FACTS

27.     Glen Canyon National Recreation Area ("GCNRA") was established in 1972 and encompasses 1,254,306 acres in northern Arizona and southeastern Utah, including portions of Garfield, Kane, San Juan, and Wayne Counties in Utah. GCNRA adjoins approximately 9.3 million acres of federal lands administered by the Bureau of Land Management (BLM). 2018 ROD at 1.

28.     In 2005, the NPS was challenged by Friends of the Earth, the National Parks Conservation Association, and Wildlands CPR in federal court over failure to promulgate a special regulation to designate off-road use areas throughout GCNRA, as required by Executive Orders 11644 and 11989 and 36 C.F.R. § 4.10(b).

29.     That litigation was resolved under a settlement agreement dated May 12, 2008, which required GCNRA to prepare an ORV plan and promulgate a regulation for off-road vehicle use. The challenged ORVMP/FEIS and ROD were prepared under the terms of the settlement agreement.

30.     The public scoping process to manage ORV and ATV use in GCNRA began in 2007. The NPS received public comments for the Draft EIS (released in January 2014) and the Final EIS (released in January 2017).

31.     In December 2010, the State submitted comments as a cooperating agency for the Glen Canyon ORVMP/EIS scoping. Letter from John Harja, Director of Utah Public Lands Policy Coordinating Office, to Stan Austin, Superintendent of GCNRA, Glen Canyon NRA Off- Road Vehicle Management Plan (Dec. 7, 2010).  A copy of this letter is attached as EXHIBIT E and incorporated in this complaint.

32.     NPS released the ORVMP/Draft EIS (DEIS) for Glen Canyon in January 2014. The State provided comments on the ORVMP/DEIS in March 2014. Letter from Kathleen Clarke, Director of Utah Public Lands Policy Coordinating Office, to Teri Tucker, Chief of Planning and Compliance for GCNRA, ORVMP/DEIS for GCNRA, (March 4, 2014). The State expressed concern that preferred Alternative E segregated motorized recreational use of the management area between highway registered vehicles and motorized ATV vehicles (including street legal ATVs). The State advocated for a multiple use model that would reduce confusing vehicle restrictions and prohibitions and allow flexibility in light of changing Utah law regarding street legal ATVs.  A copy of this letter is attached as EXHIBIT F and incorporated in this complaint.

33.     Since 2014, the Utah Traffic Code has been amended to allow for more street legal ATV use, with some exceptions such as on interstate freeways, highways with a speed limit of 50 miles an hour or more, or areas that are not open to motor vehicle use. Utah Code Ann. § 41-6a-

1509 (2018).

34.     In June 2016, the State submitted comments on the ORVMP/FEIS. Letter from Kathleen Clarke to Billy Shott, Acting Superintendent of GCNRA, GCNRA ORVMP/FEIS, Chapter 1, and Chapter 3 (June 15, 2016). The State reiterated its position that the ORVMP should follow the state distinction between street legal and non-street legal ATVs, and not the NPS's created distinction between conventional motor vehicles and non-conventional motor vehicles (which include street legal ATVs). A copy of this letter is attached as EXHIBIT G and incorporated in this complaint.

35.     In January 2017, the State provided additional comments on the ORVMP/FEIS. Letter from Kathleen Clarke to Sue Masica, Regional Director, and Billy Shott, GCNRA ORVMP FEIS (Jan. 30, 2017). The State's comments focused on two roads, the Flint Trail (Garfield County Road G1600 / NRA road 633) and Garfield County Road G15000 / NRA road 730. The State expressed the position that the Preferred Alternative's restriction of ORVs on those two roads is inconsistent with "the enabling legislation, legislative intent, as well as the general management plan of the NRA." Without sufficient data indicating that the ORV restrictions were necessary, the State contended that the restrictions were arbitrary and capricious.  A copy of this letter is attached as EXHIBIT H and incorporated in this complaint.

36.     The State made similar comments on the GCNRA Off-Road Vehicle Travel Plan Special Regulation in April 2018. Letter from Kathleen Clarke to Billy Shott, Special Regulations of the NPS; GCNRA; Motor Vehicles: Proposed Rule (April 30, 2018). A copy of this letter is attached as EXHIBIT I and incorporated in this complaint.

37.     Over the course of an eight-year period, from January of 2013 to July of 2020, Garfield County submitted numerous letters and comments to the GCNRA and NPS expressing objections and concerns similar to those set forth in the State's comment letters outlined in

paragraphs 31 through 36 above. Copies of nine letters from Garfield County to the GCNRA and NPS are attached as EXHIBIT J and incorporated in this complaint.

38.     Wayne County has also submitted letters and comments to the GCNRA and NPS, joining in the objections and concerns expressed by Garfield County. Copies of letters and comments from Wayne County are attached as EXHIBIT K and incorporated in this complaint.

39.     Congressman Chris Stewart (R. Utah CD2) and Senators Mike Lee (R. Utah) and Mitt Romney (R. Utah) have also submitted comments and concerns to the DOI and GCNRA. Copies of letters from Congressman Chris Stewart and Senators Mike Lee and Mitt Romney are attached as EXHIBIT L and incorporated in this complaint.

40.     The Record of Decision (ROD) for the Off-Road Vehicle Management Plan / Final Environmental Impact Statement for GCNRA was signed on August 15, 2018.  A copy of this 2018 ROD, hereinafter referred to as the "2018 ROD,"  is attached hereto as EXHIBIT M.

41.     As stated above in paragraph 1, on January 15, 2021, Defendants approved and adopted the ORV Plan, ROD, and Final Rule challenged in the present action.  36 C.F.R. § 7.70(f), 86 Fed. Reg. 3804 (Jan. 15, 2021).

42.     Pursuant to the ORV Plan, ROD and Final Rule, street-legal ATVs and ORVs are prohibited on all roads in the Orange Cliffs Special Management Unit with two exceptions: (1) The Flint Trail is open to street-legal ATVs and ORVs south of the road's intersection with Poison Springs/North Hatch Canyon Road, Garfield County B Road 0011D; and (2) the Cove Road, Garfield County D Road 16050, is open to street-legal ATVs and ORVs.

43.     The ORV Plan, ROD and Final Rule have failed to recognize and therefore closed three Wayne and Garfield County D Roads, including: (1) High Spur Road, Wayne County D Road 120_1; (2) Gordon Flat Road, Wayne County D Road 114_19; and (3) Sewing Machine Road, Garfield County D Road GC16052.

44.     The ATV and ORV prohibitions in the Defendants' ORV Plan, ROD and Final Rule have also resulted in *de facto* prohibition of ATV and ORV use on (1) Spur Trail Road, Wayne County D Road 120_5, which lies entirely on BLM land west of the GCNRA but can only be accessed from Spur Road within the GCNRA; and (2) Windy Peak Road, Wayne County B Road 120A, which lies entirely on BLM land west of the GCNRA but can only be accessed from Spur Road within the GCNRA.

45.     Two environmental groups, the National Parks Conservation Association (NPCA) and the Southern Utah Wilderness Alliance (SUWA) challenged the Defendants' January 15, 2021, ORV Plan, ROD, and Final Rule in separate legal actions in Federal District Court in Washington D.C., *NPCA v. DOI, et. al.* 1:21-cv-171 and *SUWA v. DOI, et. al.*, 1:23-cv-693. These environmental groups alleged that DOI and NPS violated federal law and argued that ATVs and ORVs should be prohibited in the entire GCNRA.

46.     The two cases were consolidated and ultimately, on April 9, 2024, both environmental groups and the Defendants submitted to the court a settlement agreement pursuant to which the Defendants have agreed, among other things, to revise the ORV Plan, ROD and Final Rule and consider an additional prohibition of the use of street-legal ATVs and ORVs on an 8-mile segment of the Flint Trail within the Orange Cliffs Management Unit and eliminate the Superintendent's ability to designate the Flint Trail for street-legal ATV and ORV use.

47.     Plaintiffs were not parties to and are not bound by these D.C. District Court cases. Plaintiffs oppose the settlement.

48.     Federal law for the National Park Service states that traffic and vehicle use within a park area is governed by state law unless specifically addressed by other regulations, and violating a provision of state law is prohibited. 36 C.F.R. § 4.2 (2018). State law allows for street-legal ATVs on roads such as these, Utah Code Ann. § 41-6a-1509, but the Defendants' ORV Plan,

ROD, and Final Rule prohibit them in most of the Orange Cliffs Unit.

49.     Federal law also requires that the superintendent provide a written determination setting forth reasons for a restriction, condition, public use limit, or closure, and an explanation of why less restrictive measures will not suffice. 36 C.F.R. § 1.5(c) (2018). There is no explanation given for the restriction of ORVs on roads in the Orange Cliffs Unit.

50.     Executive Order 11644, issued in 1972, establishes policies and provides procedures to control the use of ORVs on public lands. Executive Order 11644 was issued because of the increasing use of ORVs and the need for a unified federal policy with respect to their use on federal land.

51.     Executive Order 11644 defines "off-road vehicle" as "any motorized vehicle designed for or capable of cross-country travel on or immediately over land, water, sand, snow, ice, marsh swampland, or other natural terrain."

52.     Executive Order 11644 directed each agency head to develop and issue regulations and administrative instructions to provide for administrative designation of the areas on public lands where ORVs may be permitted, based on "the protection of the resources of the public lands, promotion of the safety of all users of those lands, and minimization of conflicts among the various uses of those lands."

53.     In Utah, ATVs can be street legal if they meet the definition and requirements in Utah Code Ann. § 41-6a-1509 (2018).

### FIRST CAUSE OF ACTION
*(Defendants' ATV and ORV restrictions and road closures are Ultra Vires and violate the Constitutional Principle of Separation of Powers)*

54.     Plaintiffs reallege and incorporate by reference all allegations contained in paragraphs 1 through 53.

55.     Defendants have acted *ultra vires*, arbitrarily and capriciously, and not in

accordance with law by prohibiting use of ATVs and ORVs on roads within the Orange Cliffs Unit and completely closing roads without providing any justification for doing so or following the procedures mandated by law.

56.     The only conceivable, albeit unstated, justification for the prohibition of use by ATVs and ORVs and closure of roads in the Orange Cliffs Unit is an unjustified concern that ATV and ORV use will somehow cause damage to the wilderness character of the surrounding land within the National Recreation Area.

57.     Congress has reserved for itself the sole authority to designate wilderness.  16 U.S.C. § 1131(a).  Congress granted the Secretary of the Interior specific and limited authority to identify lands meeting the definition of wilderness and study those lands to make recommendations to Congress.  43 U.S.C. § 1782.  This wilderness inventory and study program expired in 1993 and has not since been expanded or reauthorized by Congress.  The Department of the Interior and its agencies lack the legal authority to implement wilderness type management.

58.     Accordingly, Defendants have acted *ultra vires*, arbitrarily and capriciously and have unconstitutionally violated the separation of powers doctrine by implementing wilderness type management without Congressional authority.

59.     Defendants' actions have caused and will continue to cause loss of revenue to the State, SITLA and Wayne and Garfield Counties due to decreased use of and access to the public lands within the Orange Cliffs Unit of the National Recreation Area and state-owned lands just outside the GCNRA.

60.     The agency actions which are the subject of this complaint are final agency actions subject to judicial review.

61.     Plaintiffs seek a judicial determination that the Defendants have acted arbitrarily

13

and capriciously, unlawfully, *ultra vires*, and in violation of the Constitution's doctrine of separation of powers by prohibiting the use of ATVs and ORVs and closing roads within the Orange Cliffs Management Unit. A favorable decision from this Court will redress the Plaintiffs' legal injuries and leave intact key components of the Plaintiffs' land use and transportation plans. Such a determination and permanent injunction will leave the Utah wilderness debate where it belongs, with the United States Congress.

## SECOND CAUSE OF ACTION
*(Defendants' ATV and ORV restrictions and road closures are Arbitrary and Capricious)*

62.   Plaintiffs reallege and incorporate by reference all allegations contained in paragraphs 1 through 61.

63.   The Administrative Procedures Act (APA) authorizes judicial review when agencies act contrary to law and/or without lawful authority, 5 U.S.C. § 706(2)(C), or arbitrarily, capriciously, and not in accordance with law, 5 U.S.C. § 706(2)(A).

64.   Defendants' ATV and ORV restrictions and road closures, as detailed above, were adopted without authority or in observance of lawful procedures and are therefore arbitrary, capricious, not in accordance with the law and without adequate explanation as required by the Code of Federal Regulation. The Court should therefore hold them unlawful and set them aside.

## THIRD CAUSE OF ACTION
*(Defendants' ATV and ORV restrictions and road closures violate Federal Law)*

65.   Plaintiffs reallege and incorporate by reference all allegations contained in paragraphs 1 through 64.

66.   National Park Service regulations for vehicles and traffic safety state that traffic and vehicle use within the recreation area are governed by state law, unless specifically addressed by another section. 36 C.F.R. § 4.2. Unless NPS provides otherwise, under 36 C.F.R. § 4.2, NPS must adopt non-conflicting state laws. 86 FR at 3805.

67.     Routes and areas designated for off-road motor vehicle use are promulgated as special regulations subject to 36 C.F.R. § 1.5 and Executive Order 11644.

68.     36 C.F.R. § 4.10 requires routes and areas designated for off-road motor vehicle use to be promulgated as special regulations. The Flint Trail and other roads within the Orange Cliffs Special Management Unit are not routes designated for off-road use, so no special regulation is needed. In the case of on-road use such as on the Flint Trail and other roads within the Orange Cliffs Management Unit, state law should govern under Section 4.2.

69.     Executive Order 11644 allows agencies to designate areas where use of ORVs may and may not be permitted, based on protection of resources, promotion of safety of all users, and minimizing conflicts among various uses of the land.

70.     Restricting ATVs and ORVs and closing roads where vehicles are already permitted does not protect resources, since the resources would already be impacted—to the extent they are impacted at all—by permitted vehicles.

71.     Restricting ATVs and ORVs on the Flint Trail and other roads and closing roads within the Orange Cliffs Unit does not promote safety because ATVs and ORVs are as safe and often safer than some conventional vehicles that are permitted.

72.     Defendants' 2018 ROD made a general statement that mitigation measures were developed to avoid or minimize impacts to park resources and also to confine the impacts of ATVs and ORVs to designated areas. However, this statement does not justify the ATV and ORV restrictions on roads within the Orange Cliffs Unit, because ATVs and ORVs do not create any new impacts beyond those already in existence due to other conventional vehicles already allowed. 2018 ROD at 7.

73.     Defendants' 2018 ROD included findings that on-road ATV and ORV use is not expected to severely or noticeably impact soil on roads because the roads are designed to be driven on and soil

has already been disturbed.  2018 ROD at 20.

74.    Minimal impacts to wildlife and paleontological resources are expected from ATVs and ORVs compared to already-existing impacts from permitted vehicles.  2018 ROD at 23 and 28.

75.    Defendants' 2018 ROD found that enforcing closures of off-road areas would mitigate impacts to soil, vegetation, wildlife, and paleontological resources. 2018 ROD at 20, 21, 23, and 28. However, restricting ATVs and ORVs on roads where other conventional vehicles are permitted does not mitigate impacts to resources that are already impacted—to the extent they are impacted at all— by those vehicles. Enforcing restrictions that require all vehicles, regardless of type, to stay within designated areas will mitigate impacts to resources.

76.    Because the roads within the Orange Cliffs Special Management Unit are not routes designated for off-road use, they should be governed by state law, as are all of the other roads within the recreation area; and state law permits street legal ATVs.

77.    Federal law also requires a written justification for a closure or restriction and an explanation of why less restrictive measures will not suffice. 36 C.F.R. § 1.5(c). Defendants' ORV Plan, ROD and Final Rule merely state that ORVs and street-legal ATVs will be authorized on unpaved roads except most roads in the Orange Cliffs Special Management Unit, but there is no explanation as to why they are not authorized there but are authorized elsewhere.

78.    Executive Order 11644 allows for a temporary restriction if it is determined that ATV or ORV use is causing or will cause considerable adverse effects on particular areas or trails. ATVs and ORVs do not cause any new adverse effects compared to impacts from vehicles already permitted on roads within the Orange Cliffs Unit.  2018 ROD at 20-28.

79.    The solution to mitigating impacts to resources is to make changes if and when monitoring shows negative results. Currently there are no negative impacts necessitating a restriction of ATVs and ORVs on roads within the Orange Cliffs Special Management Unit. The

16

Court should therefore hold the ATV and ORV restriction and other roads closures unlawful and set them aside.

## FOURTH CAUSE OF ACTION
*(Defendants' ATV and ORV restrictions and road closures violate State Law)*

80.   Plaintiffs reallege and incorporate by reference all allegations contained in paragraphs 1 through 79.

81.   National Park Service regulations state that traffic and vehicle use within park areas are governed by state law unless specifically addressed by other regulations, and that violating a provision of state law is prohibited. 36 C.F.R. § 4.2 (2018). This applies to state law that is "now or may later be in effect." 36 C.F.R. § 4.2(a).

82.   State law provides for street legal off-road vehicles on most roads in Utah, Utah Code Ann. § 41-6a-1509 (2018), including the subject roads within the Orange Cliffs Unit.

83.   Defendants' ORV Plan, ROD and Final Rule recognize that ATVs are legal to operate on a road or highway (excluding an interstate freeway or limited access highway) if they meet the "street legal" definition under the Utah Code.  86 FR 3805

84.   Defendants' ORV Plan, ROD and Final Rule also recognize that NPS adopts non-conflicting state laws pursuant to 36 C.F.R. § 4.2.  *Id.*

85.   The traffic laws within the GCNRA do not conflict with state law. Defendants' ORV Plan, ROD and Final Rule provide that the speed limit on unpaved roads is 25 mph or posted. Id. At 3807. NPS regulations provide speed limits for park areas, all under 50 mph. 36 C.F.R. § 4.21. The Utah Code states that a street-legal ATV cannot exceed 50 mph. Utah Code Ann. § 41-6a-1509(4)(a) (2018). There is no conflict between the federal law, the ROD, and state law, as 25 mph is well within the State speed limit of 50 mph for ATVs.

86.   NPS regulations prohibit violating a provision of state law. Restricting ORVs on roads

in the Orange Cliffs Unit violates state law because no special regulation is needed on well-traveled park roads that are already used by permitted vehicles. The Court should therefore hold the ORV restriction unlawful and set it aside.

## FIFTH CAUSE OF ACTION
*(Defendants' ATV and ORV restrictions and road closures constitute unlawful de facto wilderness management)*

87.     Plaintiffs reallege and incorporate by reference all allegations contained in paragraphs 1 through 86.

88.     As alleged above in paragraph 51, the only conceivable, albeit unstated, justification for the closure of roads to ORV use in the Orange Cliffs Unit is an abstract concern that such ORV use will somehow cause damage to the wilderness character of the surrounding land within the National Recreation Area.

89.     Congress has reserved for itself the sole authority to designate wilderness.  16 U.S.C. § 1131(a).  Congress granted the Secretary of the Interior specific and limited authority to identify lands meeting the definition of wilderness and study those lands to make recommendations to Congress. 43 U.S.C. § 1782.  This wilderness inventory and study program expired in 1993 and has not since been expanded or reauthorized by Congress.  The Department of the Interior and its agencies lack the legal authority to implement wilderness type management.

90.     Plaintiffs seek a judicial determination that by prohibiting the use of ATVs and ORVs and closing roads within the Orange Cliffs Unit, Defendants have engaged in unlawful *de facto* wilderness management.  A favorable decision from this Court will redress the Plaintiffs' legal injuries and leave intact key components of the Plaintiffs' land use and transportation plans. Such a determination and permanent injunction will leave the Utah wilderness debate where it belongs, with the United States Congress.

### SIXTH CAUSE OF ACTION
*(Defendants' ATV and ORV restrictions and road closures violate valid and existing R.S. 2477 Rights)*

91.     Plaintiffs reallege and incorporate by reference all allegations contained in paragraphs 1 through 90.

92.     The State, Wayne County, and Garfield County hold valid existing R.S. 2477 right-of-way claims to the roads within the Orange Cliffs Unit of the National Recreation Area, which include rights-of-way for the Roads listed above in paragraphs 1 through 6, which are currently the subject of quiet title actions before this court in *Wayne County et. al. v. U.S.A. et. al.* 2:12-cv-00434, and *Garfield County, et. al. v. U.S.A. et. al.* 2:12-cv-00478.

93.     Defendants are legally required to recognize and acknowledge Plaintiffs' legal right to R.S. 2477 rights-of-way within the Orange Cliffs Unit of the National Recreation Area, including the right to designate such rights-of-way to be open to all forms of vehicular travel.

94.     Defendants' ATV and ORV restrictions and road closures violate Plaintiffs' R.S. 2477 rights-of-way. The Court should therefore hold them unlawful and set them aside.

### SEVENTH CAUSE OF ACTION
*(Defendants' ATV and ORV restrictions and road closures violate Federal Case Law by cutting off and diminishing Access to State-owned Land managed by SITLA)*

95.     Plaintiffs reallege and incorporate by reference all allegations contained in paragraphs 1 through 94.

96.     As alleged above in paragraph 16, Defendants' ATV and ORV restrictions and road closures cut off and diminish access to sections of land owned by the State and managed by SITLA that are located just outside the boundaries of the GCNRA, which will result in a direct adverse economic impact. Specifically, Defendants' ATV and ORV restrictions and road closures will result in loss of access or restriction of access to thousands of acres of property, which in turn will result in reduced marketability and diminished per-acre value by as much as fifty percent.

The collective loss of the value of these lands will be substantial.

97.     Continued access to these sections is paramount for fulfilling the intent of the original land grant from the United States. The closure of access roads severely limits the potential uses of these lands and their accessibility, thereby reducing their attractiveness to potential buyers or lessees.

98.     The United States may regulate the method and route of access to state school trust lands; however, that regulation cannot prevent the State or its lessee(s) from gaining access to its land, nor may it be so prohibitively restrictive as to render the land incapable of full economic development. *State of Utah v. Andrus*, 486 F. Supp. 995 (D. Utah 1979) (Commonly referred to as the *Cotter* Decision).

99.     Defendants' ATV and ORV restrictions and road closures violate the *Cotter* decision by cutting off and diminishing access to as many as six sections of land owned by the State of Utah and administered by SITLA.

100.     These sections had motorized access prior to Defendants' ATV and ORV restrictions and road closures. Defendants' ATV and ORV restrictions and road closures effectively diminish and, in some instances, eliminate access, which deprives the State and SITLA of the full economic value of their land, in violation of the law.

101.     BLM may consider that this decision does not impact the State-owned SITLA parcels to the extent prohibited by the *Cotter* decision; however, the lack of available roads, even if they are only "paper routes" (i.e. routes that are only visible on maps but are reclaimed on the ground), will substantially impair actual access to those parcels and increase the amount of time and financial capital necessary for prospective lessees to access those lands, which will undoubtedly render those lands "incapable of full economic development." *Id*.

102.     Defendants' ATV and ORV restrictions and road closures violate the State's and SITLA's rights under *Cotter*. The Court should therefore hold them unlawful and set them aside.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request relief and judgment against Defendants as follows:

1.      Declare as a matter of law that by adopting and implementing ATV and ORV restrictions and road closures, Defendants have acted unlawfully, *ultra vires* and in violation of the Constitutional doctrine of separation of powers;

2.      Declare as a matter of law that by adopting and implementing ATV and ORV restrictions and road closures, Defendants have acted arbitrarily and capriciously;

3.      Declare as a matter of law that by adopting and implementing the ATV and ORV restrictions and road closures, Defendants have violated National Park Service regulations and state law;

4.      Declare as a matter of law that by adopting and implementing the ATV and ORV restrictions and road closures, Defendants have engaged in unlawful *de facto* wilderness management;

5.      Declare as a matter of law that by adopting and implementing the ATV and ORV restrictions and road closures, Defendants have failed to recognize and thus violated Plaintiffs' valid and existing R.S. 2477 rights-of-way for roads within the Orange Cliffs Unit;

6.      Declare as a matter of law that by adopting and implementing the ATV and ORV restrictions and closures, Defendants have violated the State's and SITLA's rights under *Cotter*;

7.      Declare that the ATV and ORV restrictions and road closures of Defendants' ORV Plan, ROD and Final Rule are invalid and enjoin Defendants from implementing them;

8.      Order Defendants to pay Plaintiffs' costs and fees incurred herein as allowed by law; and

9.      Provide all other relief which the Court deems just and proper in the circumstances.

Respectfully submitted this 28th day of May, 2024.

UTAH ATTORNEY GENERAL'S OFFICE


/s/ Roger R. Fairbanks
Kathy A.F. Davis
Roger R. Fairbanks
*Assistant Attorneys General*