Stephen H.M. Bloch (# 7813)
Laura Peterson (# 16135)
Hanna Larsen (# 18458)
SOUTHERN UTAH WILDERNESS
ALLIANCE
425 East 100 South
Salt Lake City, Utah 84111
Telephone: (801) 486-3161
steve@suwa.org
laura@suwa.org
hanna@suwa.org

*Attorneys for Proposed Defendant-Intervenor Southern Utah Wilderness Alliance*

Jonathan Martel (Pro Hac Vice)
Kolya Glick (Pro Hac Vice)
Charles Birkel (Pro Hac Vice)
ARNOLD & PORTER KAYE SCHOLER
LLP
601 Massachusetts Ave., N.W.
Washington, D.C. 20001
Telephone: (202) 942-5862
jonathan.martel@arnoldporter.com
kolya.glick@arnoldporter.com
charlie.birkel@arnoldporter.com

*Attorneys for Proposed Defendant-Intervenor National Parks Conservation Association*

**IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF UTAH, SOUTHERN DIVISION**

| | |
|---|---|
| **STATE OF UTAH** *et al.*,<br><br>  Plaintiffs,<br><br>v.<br><br>**DEB HAALAND**, *et al.*,<br><br>  Defendants,<br><br>and<br><br>**SOUTHERN UTAH WILDERNESS ALLIANCE** and **NATIONAL PARKS CONSERVATION ASSOCIATION**,<br><br>  Proposed Defendant-Intervenors. | Case No. 4:24-cv-0048-DN-PK<br><br>**MOTION TO INTERVENE AND MEMORANDUM IN SUPPORT**<br><br>Judge David Nuffer<br>Magistrate Judge Paul Kohler |

The Southern Utah Wilderness Alliance ("SUWA") and National Parks Conservation Association ("NPCA") (collectively, "Conservation Organizations") respectfully move this Court for an Order granting them intervention as of right in this matter or, in the alternative, permissive intervention. A memorandum supporting the Conservation Organizations' motion is included herein. Counsel for Plaintiffs State of Utah *et al.* have informed counsel for the Conservation Organizations that Plaintiffs take no position on this motion. Counsel for Federal Defendants Deb Haaland *et al.* have informed counsel for the Conservation Organizations that the Federal Defendants reserve their position until they have had a chance to review the motion.

The Conservation Organizations easily meet the Tenth Circuit's four-part test for intervention as of right and thus this motion should be granted. Plaintiffs challenge the federal defendants' authority to regulate the use of street-legal all-terrain vehicles ("ATVs") and certain off-road vehicles ("ORVs") within the Glen Canyon National Recreation Area ("Glen Canyon" or "NRA"). A ruling in favor of Plaintiffs that the Federal Defendants lack such authority would harm the Conservation Organizations' demonstrated interests in protecting these public lands from ORV-related impacts.

## BACKGROUND

The State of Utah, the Utah School and Institutional Trust Lands Administration ("SITLA"), Wayne County, and Garfield County (collectively, "Plaintiffs") have challenged the National Park Service's ("NPS") approval of the Glen Canyon Off-Road Vehicle Management Plan and Final Environmental Impact Statement ("ORV Plan"), the associated Record of Decision ("ROD"), and special regulation implementing the ORV Plan, 36 C.F.R. § 7.70(f), 86 Fed. Reg. 3804 (Jan. 15, 2021) ("Final Rule"). Collectively, the ORV Plan, ROD,

1

and Final Rule authorized ORV use in many areas of the NRA, including park roads ("GMP roads"),[1] designated ORV routes, and certain shoreline access areas ("SAAs").

I.  **Glen Canyon National Recreation Area**

In 1972, Congress established the NRA by passing the Glen Canyon Enabling Act, 16 U.S.C. §§ 460dd, *et seq.* Approximately 13% of the NRA is covered by Lake Powell, and the remaining portions consist of dramatic redrock desert, "incised by deep canyons, dry washes, steep cliffs . . . talus, and clay or slickrock badlands."[2] This sublime desert landscape is sprinkled with shrublands, grasslands, and pinyon-juniper woodlands.[3] The diverse vegetation within the NRA also provides important habitat for hundreds of vertebrate species, several of which are listed as federally endangered, federally threatened, or are deemed "species of concern."[4]

Many areas within the NRA have, or are capable of developing, alluvial soils and fragile biological soil crusts, which help prevent erosion, retain water, and provide nitrogen for plant growth.[5] These soils are easily eroded or destroyed if disturbed, and when that occurs "the ecology of the entire ecosystem suffers a loss of productivity, diversity, and integrity."[6] Glen Canyon is also a culturally and paleontologically rich area. Over 2,500 cultural sites have been recorded in the NRA and include "cliff dwellings, granaries, open habitation sites, lithic and ceramic scatters, and rock art panels."[7]

Finally, in addition to water-based recreation on Lake Powell, Glen Canyon offers many

---

[1] *See* 36 C.F.R. § 7.70(f)(1) (defining GMP roads).
[2] ORV Plan at 98.
[3] *See id.* at 97.
[4] *Id.* at 116, 121.
[5] *Id.*
[6] *Id.*
[7] *Id.* at 179.

opportunities for nonmotorized recreational activities including sightseeing, photography, wildlife viewing, hiking, backpacking, kayaking, canoeing, and canyoneering.

## II.  Federal Court Litigation and Revisions to the Final Rule

Executive Order 11644 states that NPS may allow ORV use within the National Park System only after determining that such use "will not adversely affect their natural, aesthetic, or scenic values."[8] NPS implemented that mandate at 36 C.F.R. § 4.10, which duly prohibits ORV use except on "routes and areas designated for [ORV] use" and requires that such designations occur through "special regulations" applicable to specific park units.[9]

In 1979, NPS released the General Management Plan ("GMP") for the NRA.[10] The GMP identified twenty SAAs (*i.e.*, shorelines accessible by one or more dirt roads or trails)[11] and directed that the Orange Cliffs unit be "maintained as a critical backdrop for Canyonlands National Park and as a major vantage point for spectacular views into the park."[12] Additionally, the GMP identified a system of park roads ("GMP roads") open to travel by conventional motor vehicles[13] but did not authorize any motorized vehicle use off the designated GMP roads.[14] From 1979 until the Final Rule's issuance in 2021, NPS never promulgated a special regulation to legally authorize ORV use anywhere within Glen Canyon. Nonetheless, NPS allowed ORV use

---

[8] *See* Exec. Order 11644 § 3(a)(4), 37 Fed. Reg. 2,877, 2,878 (Feb. 8, 1972), *amended by* Exec. Order No. 11989, 42 Fed. Reg. 26959 (May 24, 1977), *and* Exec. Order No. 12608, 52 Fed. Reg. 34617 (Sept. 9, 1987).
[9] 36 C.F.R. §§ 4.10(a), (b).
[10] ORV Plan at i.
[11] *Id.* at 31.
[12] *Id.* at 32.
[13] Conventional motor vehicles are defined as "motor vehicles designed primarily for use and operation on streets and highways that are licensed and registered for interstate travel but can be used off-road." *Id.* at 5.
[14] *Id.*

throughout the NRA despite the lack of a special regulation. In 2005, NPCA and others filed suit citing NPS's failure to comply with 36 C.F.R. § 4.10 and Executive Order 11644.[15] That litigation was resolved in 2008 by a settlement agreement in which NPS agreed to prepare a comprehensive ORV management plan for the NRA and promulgate a special regulation (if NPS determined that ORV use should be allowed in Glen Canyon at all).[16] NPS developed the ORV Plan, ROD, and Final Rule at issue in this lawsuit as a result of the 2008 settlement.[17]

Subsequently, the Conservation Organizations challenged certain provisions of the ORV Plan, ROD, and Final Rule on the grounds that they were not sufficiently protective of the NRA; specifically, that they violated Executive Order 11644, the NPS Organic Act, the National Environmental Policy Act, and those statutes' implementing regulations.[18] Those cases were ultimately resolved via settlement wherein NPS agreed to "initiate a new rulemaking that proposes revisions to the [Final Rule]" ("Revised Rule").[19] Among other things, NPS agreed to propose to limit certain GMP roads, including an eight-mile segment of Poison Springs Loop that is located within the Orange Cliffs Special Management Unit, to conventional vehicles.[20] NPS agreed to take final action on the proposal by January 10, 2025.[21]

---

[15] *See generally*, *Friends of the Earth, Bluewater Network Div. v. United States Dep't of the Interior*, Case No. 1:05-cv-02302-RCL (D.D.C.).
[16] ORV Plan at ii.
[17] *Id.*
[18] *See generally*, *Nat'l Parks Conserv. Ass'n. v. United States Dep't of the Interior*, 1:21-cv-00171-ACR (D.D.C.); *S. Utah Wilderness All. v. Nat'l Park Serv.*, 1:23-cv-00693-ACR (D.D.C.) (collectively, "*Conservation Organizations' Litigation*"). Contrary to Plaintiffs' assertions, Conservation Organizations did not "argue[] that ATVs and ORVs should be prohibited in the entire GCNRA." *Contra* Compl. ¶ 45.
[19] *Conservation Organizations' Litigation* Settlement Agreement, 2, ECF No. 83-1.
[20] *Id.* at 3-4.
[21] *See id.* at 5. NPS released the proposed Revised Rule on September 16, 2024. *See generally*, Glen Canyon National Recreation Area; Motor Vehicles, 89 Fed. Reg. 75,511 (Sept. 16, 2024).

### III. Proposed Defendant-Intervenors

SUWA is a nonprofit organization dedicated to the preservation of outstanding wilderness-quality and other sensitive public lands across Utah and the management of these lands in their natural state for the benefit of all Americans.[22] SUWA has approximately 12,000 members, many of whom reside in Utah.[23] SUWA members and staff frequently visit and recreate on the lands within Glen Canyon NRA.[24] SUWA has long advocated for the protection of lands within and around Glen Canyon, including preventing damage from rampant ORV use and submitted comments at every stage of the public planning process leading up to the ORV Plan, ROD, and Final Rule at issue in Plaintiffs' complaint.[25]

NPCA is a non-profit organization whose mission is to enhance and protect the National Park System and its now 431 component units. NPCA has more than 1.6 million members and supporters nationally who love the National Park System and visit its component units, including 15,697 members and supporters in Utah, and members who visit and recreate at Glen Canyon NRA.[26] As described above, NPCA filed a lawsuit in 2005 over NPS's ongoing violation of 36 C.F.R. § 4.10, achieving a settlement in 2008 that required NPS to evaluate the authorization of ORV use in Glen Canyon and to issue the Final Rule Plaintiffs challenge in this case.[27] NPCA has diligently pursued its interests in preserving the NRA since then by actively participating in NPS's rulemaking process regarding ORV use in Glen Canyon and filing suit

---

[22] Decl. of Ray Bloxham ¶ 4 (attached as Ex. 1).
[23] *Id.*
[24] *Id.* ¶¶ 8-10.
[25] *Id.* ¶ 7.
[26] Decl. of Ernest Atencio ¶ 4 (attached as Ex. 2).
[27] *Id.* ¶ 6.

again in 2021 to challenge aspects of NPS's Final Rule as not sufficiently protective.[28]

## ARGUMENT

### The Conservation Organizations are Entitled to Intervene as of Right

Under Federal Rule of Civil Procedure 24(a)(2), "the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."[29] The Tenth Circuit "has historically taken a 'liberal' approach to intervention and thus favors the granting of motions to intervene."[30] "Federal courts should allow intervention where no one would be hurt and greater justice could be attained."[31] Moreover, when litigation raises an issue of significant public interest, "the requirements for intervention may be relaxed."[32] Even without relaxing the requirements, the Conservation Organizations easily meet the test for intervention as of right under Rule 24(a)(2).

**I.      The Conservation Organizations' Motion to Intervene is Timely.**

The Conservation Organizations' motion is timely. This motion is being filed after the Plaintiffs filed their complaint and Federal Defendants filed their response. The administrative

---

[28] *Id.* ¶ 7-8.
[29] Fed. R. Civ. P. 24(a)(2).
[30] *W. Energy All. v. Zinke* ("*Zinke*"), 877 F.3d 1157, 1164 (10th Cir. 2017).
[31] *Utah Ass'n of Cnty. v. Clinton* ("*UAC*"), 255 F.3d 1246, 1250 (10th Cir. 2001) (quotation marks omitted).
[32] *San Juan Cnty. v. United States*, 503 F.3d 1163, 1201 (10th Cir. 2007) (en banc).

record has not yet been produced and merits briefing has not yet begun.[33] Thus, there can be no prejudice to the parties.[34]

II.    **The Conservation Organizations Have a Legally Protectable Interest in Glen Canyon NRA.**

The Conservation Organizations have "an interest relating to the property or transaction that is the subject of the action"—namely, the public lands and resources that make up Glen Canyon and the greater area.[35] The Tenth Circuit has made clear that a prospective intervenor's environmental concern—demonstrated through a record of involvement in protecting that environmental concern—is a legally protectable interest sufficient to support intervention as of right under Rule 24(a)(2).[36]

The Conservation Organizations and their members have a significant interest in the NRA, which contains important cultural and natural resources.[37] They have worked for decades to protect these public lands from harmful ORV-related impacts.[38] This includes, but is not limited to, participating in NPS's travel planning process for the ORV Plan, reaching a settlement requiring NPS to issue the Final Rule, and subsequently litigating the ORV Plan and the Conservation Organizations' own challenge to the Final Rule.[39] Both SUWA's and

---

[33] *See* Approved Scheduling Order, unpag. 3-4, ECF No. 21.
[34] *See, e.g., UAC*, 255 F.3d at 1250–51 (holding motion to intervene was timely given "the relatively early stage of the litigation and the lack of prejudice to plaintiffs flowing from the length of time between the initiation of the proceedings and the motion to intervene").
[35] Fed. R. Civ. P. 24(a)(2).
[36] *See Zinke*, 877 F.3d at 1165-66 (holding that conservation groups with a "record of advocacy" and "a demonstrated concern for the damage to public lands caused by oil and gas developments" had a legally protectable interest).
[37] Bloxham Decl. ¶¶ 5-11; Atencio Decl. ¶¶ 9-10.
[38] Bloxham Decl. ¶¶ 7, 12-13; Atencio Decl. ¶¶ 6-9.
[39] Bloxham Decl. ¶ 7, 12-13; Atencio Decl. ¶¶ 6-9.

7

NPCA's members also frequently visit these lands for recreation, sightseeing, and cultural and aesthetic appreciation.[40]

### III. The Conservation Organizations' Interests May be Impaired by a Decision Setting Aside or Remanding the ORV Plan and Final Rule.

The Conservation Organizations easily satisfy Rule 24(a)(2)'s impairment prong, which requires a showing that the litigation "may as a practical matter impair or impede the movant's interest."[41] This is a "minimal burden" and requires the movants to show "only that impairment . . . is possible if intervention is denied."[42]

Here, the Conservation Organizations' interests may be impaired if the Court were to reverse, vacate, set aside, or modify the ORV Plan, ROD, and Final Rule based on Plaintiffs' arguments. Plaintiffs challenge NPS's authority to regulate the use of street-legal ATVs and certain ORVs within the NRA.[43] The Court's decision on this issue may impact NPS's promulgation of the forthcoming Revised Rule, wherein NPS has proposed to, among other things, "prohibit the use of OHVs and street-legal ATVs on [a segment of the] Poison Spring Loop."[44] Were a court decision to rule in favor of Plaintiffs that NPS lacks that authority, Conservation Organizations' interests would clearly be impaired.

---

[40] Bloxham Decl. ¶¶ 9-11, 14; Atencio Decl. ¶¶ 4, 9-12.
[41] Fed. R. Civ. P. 24(a)(2).
[42] *WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192, 1199 (10th Cir. 2010)); *see also Zinke*, 877 F.3d at 1167 (noting that test regarding potential impairment of interest "is met in environmental cases where the district court's decision would require the federal agency to engage in an additional round of administrative planning and decision-making that itself might harm the movants' interests, even if they could participate in the subsequent decision-making.").
[43] Compl. ¶¶ 54-86.
[44] 89 Fed. Reg. at 75,513.

8

In addition, the ORV plan, ROD, and Final Rule limit street-legal ATVs and certain ORVs on specified routes and close other routes within the NRA.[45] These limitations and closures are intended to protect the NRA's soundscapes, soils, vegetation, cultural sites, wildlife habitat and wilderness character, as well as lessen visitor conflicts in the NRA.[46] A decision by the Court to vacate, enjoin, set aside, or modify those portions of the ORV Plan, ROD, and Final Rule would revive the threat of adverse ORV impacts on these public lands and resources, thereby diminishing the remote and scenic nature of Glen Canyon and harming the Conservation Organizations and their members' interests in the area.[47]

### IV. The United States Does Not Adequately Represent the Conservation Organizations' Interests.

The adequacy prong is a low bar, which is satisfied where the government is obligated to represent a "broad spectrum" of public interests that "may conflict" with the intervenors' "particular interest[s]"—even if the intervenors share the same ultimate litigation objective.[48] As the Tenth Circuit has held, "the government cannot adequately represent the interests of a private intervenor *and* the interests of the public."[49] And, "'[i]f the [government] and the intervenors would only be aligned if the [] court ruled in a particular way, then a possibility of

---

[45] Compl. ¶¶ 42-43.
[46] *See* Final Rule, 86 Fed. Reg. at 3805; ROD at 3.
[47] Bloxham Decl. ¶¶ 13-15; Atencio Decl. ¶¶ 10-12.
[48] *UAC*, 255 F.3d at 1255–56; *Zinke*, 877 F.3d at 1168; *see also Kane Cnty. v. United States*, 928 F.3d 877, 895-96 (10th Cir. 2019) (finding inadequate representation where government's "broad-ranging" interests were not identical to intervenor's narrower interests); *Kane Cnty. v. United States*, 94 F.4th 1017, 1033 (10th Cir. 2024) (reiterating that the presumption of adequate representation does not apply when movants' interests are not identical to the United States' interests).
[49] *Zinke*, 870 F.3d at 1168.

inadequate representation exists.'"[50]

As in *Zinke* and *UAC,* here the United States does not adequately represent the Conservation Organizations' unique and long-standing interests in protecting the Glen Canyon NRA and its natural resources from motorized vehicles. Indeed, the Conservation Organizations have been at odds with NPS for decades over NPS's approach to motorized travel management planning in Glen Canyon. The Conservation Organizations' fundamental position throughout has been that NPS has not adhered to its primary mandate to conserve the resources in the NRA unimpaired for future generations.  NPS's ongoing failure to sufficiently protect the resources in the NRA from ORV damage over the course of decades necessitated NPCA bringing first one lawsuit, which resulted in the ORV Plan, ROD, and Final Rule, and then a second lawsuit with SUWA, which resulted in NPS's agreement to propose revisions to the 2021 Final Rule to be more restrictive of certain types of motorized vehicle use.[51] The fact that the Conservation Organizations seek to intervene in this lawsuit to defend their interests in upholding portions of the 2021 Rule does not diminish this potential conflict. The Conservation Organizations' separate preceding lawsuits against NPS over this rule only underscore why the government does not adequately represent the Conservation Organizations' interests in this case.[52] And, while the interests of the Conservation

---

[50] *Id.* (quoting *N.M. Off-Highway Vehicle All. v. U.S. Forest Serv.*, 540 F. App'x 877, 881–82 (10th Cir. 2013) (unpublished)).
[51] Bloxham Decl. ¶ 7; Atencio Decl. ¶¶ 6-8.
[52] *See Coal. of Ariz./N.M. Counties for Stable Econ. Growth v. Dep't of the Interior*, 100 F.3d 837, 845 (10th Cir. 1996) (explaining that the adequacy of a federal agency's representation of an environmental intervenor's interests was "made all the more suspect by its reluctance" to take the regulatory action challenged in the suit, which it performed only after the intervenor "threatened, and eventually brought, a law suit to force compliance with" the underlying statute).

Organizations and NPS align in support of upholding the Final Rule against Plaintiffs' challenges, "there is no assurance of identical and aligned interests if the [Rule] is not upheld" and this court "must balance the various hardship claims" in fashioning a remedy.[53]

### Alternatively, Permissive Intervention is Appropriate

In the alternative, this Court should grant permissive intervention under Federal Rule of Civil Procedure 24(b). Rule 24(b) allows for intervention when: (1) the motion is timely; (2) the movants have "a claim or defense that shares with the main action a common question of law or fact"; and (3) the court determines that intervention will not "unduly delay or prejudice the adjudication of the original parties' rights."[54] For the aforementioned reasons, these elements are satisfied, and the Conservation Organizations raise defenses that have questions of law and fact in common with those defenses raised by the Federal Defendants.

### CONCLUSION

For these reasons, the Conservation Organizations respectfully request that the Court grant their motion to intervene. A proposed response to Plaintiffs' complaint is attached as Exhibit 3.

Respectfully submitted October 7, 2024

*s/ Hanna Larsen*
Hanna Larsen
Stephen Bloch
Laura Peterson

*Attorneys for Proposed Defendant-Intervenor Southern Utah Wilderness Alliance*

Jonathan Martel (Pro Hac Vice)
Charles Birkel (Pro Hac Vice)
Kolya Glick (Pro Hac Vice)

*Attorneys for Proposed Defendant-Intervenor National Parks Conservation Association*

---

[53] *N.M. Off-Highway Vehicle All.*, 540 F. App'x at 881–82.
[54] Fed. R. Civ. P. 24(b)(1)(B), (b)(3).

## CERTIFICATE OF COMPLIANCE

I certify that this Motion to Intervene and Memorandum in Support complies with the word limit set forth in DUCivR 7-1(a)(4)(D)(i) because it contains 3,099 words, excluding the parts of the document exempted by DUCivR 7-1(a)(6)(B).

*/s/ Hanna Larsen*
Hanna Larsen
