*State of Utah v. Haaland* **Case No. 4:24-cv-0048-DN-PK**

# EXHIBIT 1

**Declaration of Ray Bloxham**

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF UTAH, SOUTHERN DIVISION

| | |
|---|---|
| **STATE OF UTAH** *et al.*,<br><br>   Plaintiffs,<br><br>v.<br><br>**DEB HAALAND**, *et al.*,<br><br>   Defendants,<br><br>and<br><br>**SOUTHERN UTAH WILDERNESS ALLIANCE** and **NATIONAL PARKS CONSERVATION ASSOCIATION**,<br><br>   Proposed Defendant-Intervenors. | Case No. 4:24-cv-0048-DN-PK<br><br>**DECLARATION OF RAY BLOXHAM**<br><br>Judge David Nuffer<br>Magistrate Judge Paul Kohler |

I, **RAY BLOXHAM**, declare as follows:

1. I have personal knowledge of each of the facts set forth below, and if called upon to do so, could and would testify regarding the following. This declaration is filed in support of Southern Utah Wilderness Alliance's ("SUWA") Motion to Intervene and Memorandum in Support in the above-captioned matter.

2. I am the Field Director for SUWA and have served in this position since 1999. I am also an active member of SUWA. As Field Director, I am required to spend considerable time on the ground visiting federal public lands throughout Utah, including within the Glen Canyon National Recreation Area ("Glen Canyon" or "NRA"). For more than twenty-five years,

I have worked to protect wilderness-quality federal public lands throughout the state of Utah, including within and around the NRA.

3. I am an active member of SUWA.

4. Based in Salt Lake City, Utah, SUWA has approximately 12,000 members, many of whom reside in Utah. SUWA's mission is the preservation of the outstanding wilderness and other sensitive public lands at the heart of the Colorado Plateau, and the management of these lands in their natural state for the benefit of all Americans. SUWA promotes local and national recognition of the region's unique character through research and public education; supports both administrative and legislative initiatives to permanently protect Utah's wild places within the National Park and National Wilderness Preservation System or by other protective designations where appropriate; builds support for such initiatives on both the local and national level; and provides leadership within the conservation movement through advocacy for wilderness preservation.

5. SUWA members and staff have a well-demonstrated interest in the preservation and protection of the public lands that comprise the remarkable Glen Canyon National Recreation Area, as well as the National Park Service's ("NPS") compliance with federal laws and regulations to protect and conserve that place. SUWA members and staff also have a longstanding and well-demonstrated interest in the preservation and protection of wildlife, vegetation, and cultural resources in the region. SUWA takes an active role in providing information to NPS regarding Glen Canyon and participates in all levels of NPS's decision-making process.

6. SUWA members and staff participate in information gathering and dissemination, education and public outreach, commenting on proposed government actions, and other activities related to the management of and impacts to Glen Canyon. SUWA members benefit from NPS's compliance with federal environmental laws and agency regulations, and expect that NPS will comply with those laws and regulations.

7. For over a decade, SUWA has been concerned with off-road vehicle ("ORV") use and damage within Glen Canyon and has been involved with the NPS's Off-Road Vehicle Travel Management Plan/Final Environmental Impact Statement ("ORV Plan"), the associated Record of Decision ("ROD"), and the special regulation implementing the ORV Plan ("Final Rule") at issue in this litigation. In 2010, SUWA submitted scoping comments when NPS first announced its intention to develop a comprehensive off-road vehicle management plan. In 2014, SUWA submitted public comments on the draft ORV Plan. In 2017, SUWA submitted supplemental comments on the final ORV Plan. And, in 2018, SUWA submitted further comments on the proposed special regulation intended to implement the ORV Plan. In 2023, SUWA sued over the ORV Plan and Final Rule on the grounds that NPS failed to minimize impacts when designating areas open to ORV use. That litigation was resolved via settlement in April 2024. As part of the settlement agreement, NPS agreed to revise the Final Rule ("Revised Rule"), as specified in the settlement agreement. Promulgation of the Revised Rule is underway and SUWA will submit comments on the proposed revisions during the upcoming public comment period.

8. SUWA members' and staff's recreational, aesthetic, scientific, informational, and other interests are directly affected by NPS's decision to authorize and implement the ORV Plan and would be harmed if the Court grants Plaintiffs' requested relief (including reversing,

enjoining, vacating, or otherwise modifying that decision) in part because it would impact the agreed-upon revisions to the Final Rule.

9. Over the past twenty-five years, I have traveled extensively throughout Glen Canyon, including most recently in May 2024, to backpack, camp, packraft, and explore. I have frequently visited the following areas: Bullfrog, Cane Spring Desert, Ticaboo Creek, Dirty Devil, The Big Ridge, The Spur, Orange Cliffs, Cove Canyon, Hole-in-the-Rock, Escalante River, Scorpion Bench, Circle Cliffs, Choprock Bench, Middle Moody Canyon, Dry Mesa, San Juan River, Muley Point, Johns Canyon, Slickhorn Canyon, Blue Notch Canyon, Grand Bench, Sit Down Bench, Alstrom Point, Smokey Mountain, Lees Ferry, and the Paria River areas. I have also visited and plan to return to the following designated shoreline access areas ("SAA"): Blue Notch, Bullfrog North, Bullfrog South, Dirty Devil, Farley Canyon, Red Canyon, and Warm Creek. I enjoy Glen Canyon's incredible scenic views, remote nature and opportunities for solitude, native flora and fauna, abundant wildlife, and natural and cultural resources.

10. I have plans to return to the NRA later this year to backpack the North Trail into Elaterite Basin and further to the Green River and return from the Maze and Canyonlands National Park, as well as camp, hike, and canoe from the Stanton Canyon SAA to Moqui Canyon. I look forward to exploring Glen Canyon for many years to come.

11. I took the following photos during my November 2022 and April 2023 trips, respectively. The first photo shows the serenity and tranquility of Ticaboo Canyon and is representative of the peaceful, wilderness-quality experience I seek when I visit the NRA. The second photo highlights Glen Canyon's natural beauty with the dramatic orange cliffs, pinyon-juniper, blackbrush, and cryptobiotic soil found throughout much of the NRA, including the

Orange Cliffs. ORV use throughout Glen Canyon threatens these scenic landscapes, in part by crushing and irreparably damaging blackbrush and cryptobiotic soils.





12.     The ORV Plan and Final Rule identified and authorized, for the first time since Glen Canyon's existence as an NPS unit, where conventional vehicles, street-legal all-terrain vehicles ("ATVs"), and off-highway vehicles ("OHVs") could lawfully drive throughout the NRA.[1] Currently, as a result of the Final Rule, some form of motorized vehicle use is permitted on over 300 miles of paved and unpaved park roads, fifteen SAAs, one ORV "play area," and

---

[1] Unlike conventional vehicles, OHVs are vehicles primarily designed for or capable of travel over natural or unimproved terrain. *See* 36 C.F.R. §7.70(f)(1) (definition of OHV). Street-legal all-terrain vehicles ("ATVs") are a subset of ORVs that also meet state requirements for operation on a state road or highway. *Id.* (definition of street-legal ATV). When I refer to ORVs in this declaration, I am collectively referring to conventional vehicles, OHVs and street-legal ATVs.

five designated ORV routes.[2] Although SUWA challenged the ORV Plan and current Final Rule over NPS's failure to minimize impacts of the ORV designations to the environment (among other issues), there was no dispute that NPS needed to develop a plan to regulate motorized vehicle use in Glen Canyon. Rather, SUWA's litigation concerned NPS's environmental review process and its conclusions that culminated in the ORV Plan and Final Rule. Those concerns are addressed by NPS's commitments made in the settlement agreement reached in spring 2024.

13. Because SUWA and I have worked for decades to protect the public lands in and around Glen Canyon, a decision to reverse, vacate, enjoin, or otherwise modify the ORV Plan, Final Rule, and NPS' ability to implement ORV restrictions may not only revive SUWA's and my concerns about unregulated motorized vehicle use in the NRA, but may increase harm to SUWA's and my interests in protecting and preserving the lands within and adjacent to the Glen Canyon area. Specifically, the Revised Rule intended to resolve SUWA's concerns with the ORV Plan is in jeopardy because the above-captioned matter challenges NPS' authority to regulate motorized vehicle use within the NRA, including the Orange Cliffs. Additionally, granting the Plaintiffs' requested relief would impact my ability and desire to enjoy a non-motorized experience in the NRA because protections for Glen Canyon's stunning natural beauty, prolific cultural sites, abundant wildlife habitat, and wilderness character would be diminished and street-legal ATVs and OHVs would be allowed in areas where such vehicles are currently limited or prohibited.

---

[2] The specific types of vehicles allowed vary depending on the type of designated area or route and are detailed in the Final Rule. *See* 36 C.F.R. 7.70(f)(3)(ii) Table 1.

14. For example, on one of my recent trips to Glen Canyon in 2023, I backpacked a multi-day loop in the Orange Cliffs, exiting at North Canyon and hiked the route leading to Hans Flat. Because I was backpacking north of Sunset Pass, as it proceeds to and from Poison Spring Canyon, where OHVs and street-legal ATVs are not allowed, I enjoyed and benefitted from not being impacted by the sounds of ATVs, side-by-sides, and other OHVs. If the court were to grant Plaintiffs' requested relief and enjoin NPS from implementing ORV restrictions, I would not be able to enjoy such a quiet and special experience in that remote and rugged area because OHVs and street-legal ATVs would be allowed to drive in that area.

15. My injuries and harms discussed above will be prevented by a court order affirming the ORV Plan and Final Rule. This would ensure NPS is able to comply with the terms of the settlement agreement and promulgate the Revised Rule.

I declare, under the penalty of perjury, that the foregoing is true and correct.

DATED:   September 4, 2024

Ray Bloxham