KATHY A.F. DAVIS (4022)
ROGER R. FAIRBANKS (3792)
K. TESS DAVIS (15831)
Assistant Attorneys General
Utah Attorney General's Office
MARK BOSHELL (16002)
KENDALL G. LAWS (14700)
Special Assistant Attorneys General
DEREK E. BROWN (10467)
UTAH ATTORNEY GENERAL
1594 West North Temple, Suite 300
Salt Lake City, UT 84116
kathydavis@agutah.gov
rfairbanks@agutah.gov
kaitlindavis@agutah.gov
mboshell@utah.gov
klaws@utah.gov

*Attorneys for Plaintiffs*

IN THE UNITED STATES JUDICIAL DISTRICT COURT
FOR THE DISTRICT OF UTAH, SOUTHERN DIVISION

| | |
|---|---|
| STATE OF UTAH, et al., | |
| Plaintiffs, | **PLAINTIFFS' OPENING BRIEF** |
| v. | |
| Doug Burgum, in his official capacity as Secretary of the Interior, et al., | Case No. 4:24-cv-00048-DN-PK |
| Defendants, | District Judge David Nuffer |
| and | Magistrate Judge Paul Kohler |
| SUWA, et al., | |
| Defendant-Intervenors. | |

i

# TABLE OF CONTENTS

INTRODUCTION AND BACKGROUND ................................................................................. 1

STATEMENT OF ISSUES ....................................................................................................... 4

SUMMARY OF THE ARGUMENT ......................................................................................... 5

    I.     Defendants Acted Arbitrarily and Capriciously in Violation of the Utah Enabling Act and Established Federal Case Law by Eliminating and Prohibitively Restricting Access to Sections of Trust Lands Located Adjacent to the Orange Cliffs Unit. .................................................................. 5

    II. Defendants Acted Arbitrarily and Capriciously in Violation of the APA in Adopting and Implementing ATV and ORV Restrictions and Road Closures in the Orange Cliffs Unit of the GCNRA. 6

    III.    Defendants Violated Federal Law by Implementing *De Facto* Wilderness Management on Non-Wilderness Lands. ....................................................................................................................... 6

    IV.    Defendants' ATV and ORV Restrictions Violate State Law. ............................................. 7

    V.    Defendants Violated Federal Law and the Fifth Amendment to the United States Constitution by Unlawfully Restricting Access to and Closing Roads to which the State of Utah and Wayne and Garfield Counties Hold Vested R.S. 2477 Rights-of-Way, and By Failing to Even Consider Such Rights-of-Way. ................................................................................................................................. 7

STATEMENT ON STANDING ................................................................................................. 8

LEGAL FRAMEWORK ............................................................................................................ 9

    I.     The Utah Enabling Act ........................................................................................................ 9

    II.    R.S. 2477 ........................................................................................................................... 10

    III.    National Park Service Regulations ................................................................................. 10

    IV.    The Wilderness Act ........................................................................................................ 13

    V. Administrative Procedures Act ............................................................................................ 14

        A. Rulemaking ................................................................................................................... 14

        B. Judicial Review ............................................................................................................. 15

STATEMENT OF FACTS ....................................................................................................... 15

STANDARD OF REVIEW ...................................................................................................... 21

ARGUMENT ............................................................................................................................ 22

    I.     Defendants' ATV and ORV Restrictions and Road Closures Eliminate and Restrict Access to SITLA Parcels in Violation of Utah's Right to Access Trust Lands Under the Utah Enabling Act and Federal Case Law. .................................................................................................................... 22

    II.    Defendants Acted Arbitrarily and Capriciously in Violation of the APA and Federal Law and Regulations in Adopting and Implementing ATV and ORV Restrictions and Road Closures in the Orange Cliffs Unit. ............................................................................................................................ 26

III.    Defendants Violated Federal Law by Implementing *De Facto* Wilderness Management on Non-Wilderness Lands..................................................................................................................30

IV.    Defendants' ATV and ORV Restrictions Violate State Law ...............................................32

V.    Defendants Violated Federal Law and the Fifth Amendment to the United States Constitution by Unlawfully Closing Roads to Which the State of Utah and Wayne and Garfield Counties Hold Vested R.S. 2477 Rights-of-Way, and by Failing to Even Consider Such Rights-of-Way. ...............................33

CONCLUSION AND REQUEST FOR RELIEF .......................................................................36

## TABLE OF AUTHORITIES

**Cases**

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398(2013) ...................................................... 8

*Colo. Wild, Heartwood v. U.S. Forest Serv.*, 435 F.3d 1204, 1213 (10th Cir. 2006)................. 22

*Garfield County, et. al. v. U.S.A. et. al.,* 2:11-cv-01045......................................... 3, 34

*Kane County v. U.S.,* 2:10-cv-01073-CW............................................................... 33

*Lucas v. S.C. Coastal Council,* 505 U.S. 1003(1992)................................................. 23

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139(2010)............................................. 8

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) .............. passim

*NPCA v. DOI, et. al.*, 1:21-cv-171 .................................................................. 19

*Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560(10th Cir. 1994)................................. 21

*Rocky Mountain Helicopters, Inc. v. F.A.A.*, 971 F.2d 544(10th Cir. 1992) ......................... 15

*Sierra Club v. Hodel*, 675 F. Supp. 594(D. Utah 1987) .............................................. 32

*SUWA v. Bureau of Land Mgmt.*, 425 F.3d 735(10th Cir. 2005)..................................... 10, 32

*State of Utah v. Andrus*, 486 F. Supp. 995 (D. Utah 1979) ...................................... passim

*SUWA v. DOI, et. al.*, 1:23-cv-693 .................................................................. 19

*Wayne County et. al. v. U.S.A. et. al.,* 2:12-cv-00434 ........................................... 3, 34

*Utah v. Kleppe*, 586 F.2d 756 (10th Cir. 1978) ..................................................... 23

**State Statutes**

Utah Code Ann. § 41-6a-1509 ................................................................. 16, 17, 21, 31

Utah Code Ann. §§ 72-5-302 .......................................................................... 34

Utah Const., art. XX. ....................................................................................... 23

Utah Enabling Act.................................................................................... passim

**Federal Statutes and Regulations**

16 U.S.C. § 1131 ....................................................................................... 13, 30

30 U.S.C. §§20 ................................................................................................... 6

30 U.S.C. §§181 ................................................................................................. 6

36 C.F.R. § 1 ............................................................................................. passim

36 C.F.R. § 4 ............................................................................................. passim

36 C.F.R. § 7 ......................................................................................... 1, 18, 22

43 U.S.C. § 1701 .............................................................................................. 10

43 U.S.C. § 932 ................................................................................................ 10

43 U.S.C. §§315 ................................................................................................. 6

43 U.S.C. §1782 ................................................................................................. 7

5 U.S.C. § 553 .................................................................................................. 14

5 U.S.C. § 702 .................................................................................................. 21

5 U.S.C. § 706 ......................................................................................... passim

U.S.C. § 1782 ................................................................................................... 29

Administrative Procedures Act ............................................................... passim

Dingell Act,...................................................................................................... 21

Fifth Amendment ..................................................................................... 4, 7, 8, 22

Taylor Grazing Act ........................................................................................... 6

United States Constitution, Article IV ............................................................. 6

The Wilderness Act................................................................................... passim

# INTRODUCTION AND BACKGROUND

Plaintiffs the State of Utah, including the Utah School and Institutional Trust Lands Administration ("SITLA"), Wayne County, and Garfield County ("the Counties")(collectively, "Plaintiffs"), challenge and seek to have this Court declare invalid and set aside the off-road vehicle ("ORV") and street-legal all-terrain vehicle ("ATV") restrictions and road closures established by Defendants' approval of the Glen Canyon Off-Road Vehicle Management Plan/Final Environmental Impact Statement ("ORV Plan"), the associated Record of Decision ("ROD"), and the adoption of the ORV Plan via special regulation, 36 C.F.R. § 7.70(f), 86 Fed. Reg. 3804 (Jan. 15, 2021) ("Final Rule"). Dkt 1, Compl. at ¶ 1. A copy of the Final Rule is attached to Plaintiffs' Complaint as EXHIBIT A. Glen Canyon National Recreation Area ("GCNRA") was established in 1972 and encompasses 1,254,306 acres in northern Arizona and southeastern Utah, including portions of Garfield, Kane, San Juan, and Wayne Counties in Utah. GCNRA adjoins approximately 9.3 million acres of federal lands administered by the Bureau of Land Management ("BLM"). *Id.* at ¶ 27.

Defendants' ORV Plan, ROD, and Final Rule authorize ATV and OHV use on some unpaved roads in the GCNRA but prohibit their use for most roads in the Orange Cliffs Special Management Unit ("Orange Cliffs Unit"), including: (1) Spur Road, Wayne County B Road 120; (2) Roost Road, Wayne County B Road 114; (3) Flint Trail Road, Garfield County B Road 0230, to the North and East of the intersection with Poison Springs/North Hatch Canyon Road, Garfield County B Road 0011D; and (4) Big Ridge Road, Garfield County B Road 0306. A Copy of Defendants' map depicting roads in the Orange Cliffs Unit is attached as EXHIBIT B to Plaintiffs' Complaint. Dkt 1, Compl. at ¶ 1.

Defendants' ATV and ORV prohibitions also result in a *de facto* prohibition of ATV and

1

ORV use on Windy Peak Road, Wayne County B Road 120A, which lies entirely on BLM land west of the GCNRA but can only be accessed from Spur Road within the GCNRA. Windy Peak Road provides exclusive access to a parcel of land owned by the State of Utah and managed by SITLA: Section 32 of Township 27 South, Range 16 East. *Id.* at ¶ 2.

Defendants' ATV and ORV prohibitions also result in a *de facto* prohibition of ATV and ORV use on Spur Trail Road, Wayne County D Road 120_5, which lies entirely on BLM land west of the GCNRA but can only be accessed from Spur Road within the GCNRA. Spur Trail Road also provides exclusive access to a parcel of land owned by the State of Utah and managed by SITLA: Section 36 of Township 26 South, Range 16 East in Emery County. *Id.* at ¶ 3.

Defendants' ORV Plan, ROD and Final Rule fail to recognize, and therefore render closed, three Wayne and Garfield County D Roads, including: (1) High Spur Road, Wayne County D Road 120_1; (2) Gordon Flat Road, Wayne County D Road 114_19; and (3) Sewing Machine Road, Garfield County D Road GC16052. *Id.* at ¶ 4.

High Spur Road and Gordon Flat Road provide exclusive access to two sections of land owned by the State of Utah and managed by SITLA: (1) Section 32 in Township 28 South, Range 13 East; and (2) Section 16 in Township 30 South, Range 16 East. The closure of these roads deprives Plaintiffs of access to these state-owned lands. *Id.* at ¶ 5.

Plaintiffs SITLA and Wayne County are working toward leasing and opening parcels of land owned by the State of Utah and managed by SITLA in Section 16 of Township 30 South, Range 16 East to be used as sand and gravel pits for road maintenance purposes in eastern Wayne and Garfield Counties. To this end, SITLA and Wayne County have issued and executed three Sand and Gravel Permits — 699, 701, and 702 — copies of which are attached to Plaintiffs' Complaint as EXHIBIT C. *Id.* at ¶ 6. The Counties maintain many roads in the area,

including roads in the GCNRA. *Id.* Nearby sand and gravel pits would provide a needed source of material for these roads and eliminatethe extremely high cost of trucking in material from the distant western areas of the Counties. *Id.* It would additionally provide revenue for Utah schools. *Id.*

The only means of access for the proposed sand and gravel pits would be from Roost Road and Gordon Flat Road in the GCNRA. *Id.* at ¶ 7.

Sewing Machine Road continues west of the GCNRA in Section 33 of Township 32 South, Range 15 East, and is used by cattle ranchers to access a large stock pond. This road also provides the only potential access to two nearby sections of land owned by the State of Utah and managed by SITLA just west of the boundary of the GCNRA. *Id.* at ¶ 8.

The State of Utah, Wayne County, and Garfield County hold valid existing R.S. 2477 rights-of-way to the roads within the Orange Cliffs Unit of the GCNRA, including rights-of-way for all of the roads referenced in the paragraphs above, which are currently the subject of quiet title actions before this Court in *Wayne County et al. v. U.S.A. et al.* 2:12-cv-00434, and *Garfield County, et al. v. U.S.A. et al.* 2:11-cv-01045. Maps of the Orange Cliffs Unit and adjacent land depicting roads referenced in paragraphs above, together with photographs of some of the roads, are attached to Plaintiffs' Complaint as EXHIBIT D. *Id.* at ¶ 9.

Defendants are legally required to recognize and acknowledge Plaintiffs' legal right to R.S. 2477 rights-of-way within the Orange Cliffs Unit of the GCNRA, including the right to designate such rights-of-way as open to all forms of motorized travel. Defendants' ATV and ORV prohibitions and road closures in the Orange Cliffs Unit lack adequate explanation as required by National Park Service ("NPS") regulations, are ultra vires, arbitrary and capricious, and violate federal and state law. *Id.* at ¶¶ 10-11.

Defendants' ATV and ORV prohibitions and road closures impair the value of the Orange Cliffs Unit and areas adjacent thereto and negatively affect various interests of Plaintiffs.

Plaintiffs ask this Court to find Defendants' actions unlawful; to enjoin implementation of the ORV Plan, ROD and Final Rule as they relate to the ATV and ORV restrictions and road closures in the Orange Cliffs Unit; and to direct Defendants to open the closed roads, allow ATV and ORV use on all roads within the Orange Cliffs Unit, and manage the traffic and vehicle use within the recreation area in accordance with state law, as provided in NPS regulations.

## STATEMENT OF ISSUES

1.    Whether Defendants violated the Utah Enabling Act and federal case law by eliminating and prohibitively limiting access to sections of Trust Lands by restricting access to and closing roads within the Orange Cliffs Unit of the GCNRA.

2.    Whether the BLM acted arbitrarily and capriciously in violation of the APA in adopting and implementing ATV and ORV use restrictions and road closures in the Glen Canyon Off-Road Vehicle Management Plan.

4.    Whether the BLM violated Federal Law by implementing *de facto* wilderness management on non-Wilderness lands.

5.    Whether Defendants' ATV and ORV restrictions violate State Law.

6.    Whether the BLM violated Federal and State Law by failing to consider R.S. 2477 rights-of-way for which the State and Counties hold vested title interests and by restricting access to and closing roads subject to those rights-of-way.

7.    Whether the BLM violated the Fifth Amendment to the Constitution of the United States by unlawfully taking property of the State and Counties.

## SUMMARY OF THE ARGUMENT

Plaintiffs challenge Defendants' ORV Plan, ROD, and Final Rule for the Orange Cliffs Unit of the GCNRA as unlawful for the reasons described below and request that the Court declare it unlawful and set it aside.

**I.      Defendants Acted Arbitrarily and Capriciously in Violation of the Utah Enabling Act and Established Federal Case Law by Eliminating and Prohibitively Restricting Access to Sections of Trust Lands Located Adjacent to the Orange Cliffs Unit.**

The State of Utah holds fee title to several sections of land adjacent to the Orange Cliffs Unit of the GCNRA that are administered and managed by SITLA, in trust, for the benefit of the state public-school systems ("Trust Lands"). The Trust Lands were originally granted to the State to be used for this purpose in the Utah Enabling Act, ch. 138, 28 Stat. 107 (1894). This Court held in *State of Utah v. Andrus,* 486 F. Supp. 995 (D. Utah 1979), that "the state must be allowed access [to Trust Lands] which is not so narrowly restrictive as to render the lands incapable of their full economic development" and that "the terms of FLPMA itself would indicate that Congress did not intend to amend rights under the school land grant program." *Id*. at 1009-1010. The case is commonly referred to as the *Cotter* decision.

Defendants' ORV Plan, ROD, and Final Rule eliminated and prohibitively restricted access to several sections of Trust Lands. The elimination and prohibitive restriction of access render the affected lands incapable of their full economic development, which compromises the rights granted to the State under the school land grant program in violation of the Utah Enabling Act and established federal case law.

II.    **Defendants Acted Arbitrarily and Capriciously in Violation of the APA in Adopting and Implementing ATV and ORV Restrictions and Road Closures in the Orange Cliffs Unit of the GCNRA.**

The APA authorizes the setting aside of agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; in excess of statutory jurisdiction, authority, or limitations; without observance of procedures required by law, and unwarranted or unsupported by the facts. 5 U.S.C. 706(2). There must be a "rational connection between the facts found and the choice made." *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 56(1983).

The specific facts underlying Defendant BLM's decision, set forth more fully below, reveal that Defendants acted arbitrarily and capriciously in adopting and implementing ATV and ORV restrictions and road closures in the Orange Cliffs Unit of the GCNRA.

III.    **Defendants Violated Federal Law by Implementing *De Facto* Wilderness Management on Non-Wilderness Lands.**

Constitutional authority to classify and manage public lands resides with Congress. U.S. Const., art. IV, § 3, cl. 2. In various federal laws, including but not limited to the Taylor Grazing Act ("TGA"), 43 U.S.C. §§ 315-315q, FLPMA, 43 U.S.C. §§1701 *et seq.*, the 1872 Mining Law, as amended, 30 U.S.C. §§ 20, *et seq.*, and the Mineral Leasing Laws ("MLA"), 30 U.S.C. §§ 181, *et seq.*, Congress has delegated its constitutional authority to the Federal Defendants to manage public lands. This delegated authority is defined and limited by the terms of the respective federal statutes.

Even though Defendants' ORV Plan, ROD, and Final Rule do not use the term "wilderness" to describe their management of the Orange Cliffs Unit of the GCNRA, the practical

effect of the decision was to create wilderness-type management paradigm. Wilderness review authority under §603 of FLPMA, 43 U.S.C. §1782(c), has terminated, and as a result, Federal Agencies must "not manage or otherwise treat public lands . . . as wilderness." Defendants' ORV Plan, ROD, and Final Rule unlawfully treat the non-Wilderness lands of the Orange Cliffs Unit of the GCNRA as *de facto* wilderness.

## IV.    Defendants' ATV and ORV Restrictions Violate State Law.

NPS regulations prohibit the agency from violating a provision of state law. Restricting ORVs on roads in the Orange Cliffs Unit violates Utah law because no special regulation is needed on well-traveled park roads that are already used by permitted vehicles. The Court should therefore hold the ORV restriction unlawful and set it aside.

## V.    Defendants Violated Federal Law and the Fifth Amendment to the United States Constitution by Unlawfully Restricting Access to and Closing Roads to which the State of Utah and Wayne and Garfield Counties Hold Vested R.S. 2477 Rights-of-Way, and By Failing to Even Consider Such Rights-of-Way.

Defendants' ATV and ORV restrictions and closures violate Plaintiffs' vested R.S. 2477 rights. Said rights are self-executing and fully vested according to the terms of R.S. 2477, and any requirement to establish those rights via adjudication is unlawful. The burden falls on Defendants to dispute those rights. Until that time, Utah's rights to manage and maintain these roads may not be infringed.

The ATV and ORV restrictions and road closures in the Orange Cliffs Unit that are subject to R.S. 2477 rights-of-way held by the State and Counties, and that have the status of vested real property rights, also constitute a taking of property in violation of the Fifth Amendment to the United States Constitution.

## STATEMENT ON STANDING

"To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010)). As a direct result of Defendants' ATV and ORV prohibitions and road closures, the State, SITLA, and Counties will suffer a variety of concrete, particularized, and actual or imminent injuries. All of these injuries would be adequately redressed by this Court declaring and setting aside Defendants' actions. Plaintiffs have suffered or will imminently suffer the following injuries.

First, Defendants limited access to and closed roads that provided access to sections of State-owned Trust Lands administered by SITLA. Dkt 1, Compl. at ¶¶ 1-8, 96-102. This will result in a significant loss of revenue for the State's public schools resulting from devaluation of the property. *See id*. Second, Defendants' ATV and ORV prohibitions and road closures strip the State of regulatory authority over all motorized travel within its borders and impair the State's and Counties' vested right-of-way ownership interests in the roads within the Orange Cliffs Unit and adjacent areas. *Id*. at ¶¶ 9-11, 48-53, 66-79, 81-86, 92-94. Third, the DR impairs the State's interest in the economic benefits of motorized recreation, as well as the associated tax revenue. *Id*. at ¶¶ 52-56.[1] Fourth, the ROD impairs the State's interest in agriculture, including livestock grazing, in the areas adjacent to the Orange Cliffs Unit of the GCNRA. Specifically, Sewing Machine Road, which runs west of the GCNRA in Section 33 of Township 32 South, Range 15 East, is used by cattle ranchers to access a large stock pond. *Id*. at ¶ 8.

---

[1] The Utah Division of Outdoor Recreation recently released 2023 data valuing the economic impact of ATVing at $166M and RVing at $412M. *See* https://naturalresources.utah.gov/dnr-newsfeed/utahs-outdoor-recreation-economy-breaks-records-reaching-9-5-billion/.

## LEGAL FRAMEWORK

### I.      The Utah Enabling Act

The Utah Enabling Act granted sections two, sixteen, thirty-two, and thirty-six of every township within Utah to the State for the express purpose of supporting the  State's public school systems. Utah Enabling Act, Sec. 6. In the *Cotter* decision, 486 F. Supp. at 1001, this Court explained:

> [T]he state school land grants were not unilateral gifts made by the United States Congress. Rather, they were in the nature of a bilateral contract entered into between two sovereigns. In return for receiving the federal lands Utah disclaimed all interest in the remainder of the public domain, agreed to forever hold federal lands immune from taxation, and agreed to hold the granted lands, or the proceeds therefrom, in trust as a common school fund.

Two of the findings in the *Cotter* decision are pertinent here. First, the Court found that, "Unless a right of access is inferred, the very purpose of the school trust lands would fail." *Id.* at 1002. Furthermore, because school trust grants are subject to liberal rules of statutory construction, the Court applied the common law assumption "that a grantor intended to include in the conveyance whatever was necessary for the use and enjoyment of the land in question." *Id.* Second, the Court found that "the school land grants were accomplished under what is termed 'special' legislation." *Id.* at 1009. "Special acts" supersede general acts that deal with the same subject matter, unless there is some indication that Congress intended to modify the special act. *Id.* "There is, however, no such indication in the legislative history of FLPMA. Indeed, the terms of FLPMA itself would indicate that Congress did not intend to amend rights under the school land grant program." *Id.* at 1010. The Court summarized its findings as follows:

> Thus, the court finds that 1) BLM can regulate the method and route of access to state school trust lands; 2) this regulation may be done with a view toward preventing impairment of wilderness characteristics (assuming no existing use); 3) the regulation may not, however, prevent the state or its lessee from gaining access to its land, nor may it be so prohibitively restrictive as to render the land incapable of full economic

development.

*Id.*

## II.    R.S. 2477

R.S. 2477 provides as follows: "And be it further enacted That the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." Act of July 26, 1866, ch. 262, § 8, 14 Stat. 251, 253, codified at 43 U.S.C. § 932, repealed by Federal Land Policy Management Act of 1976 (FLPMA), Pub. L. No. 94-579 § 706(a), 90 Stat. 2743. R.S. 2477 was an open congressional grant *in praesenti* of public highway rights-of-way for the benefit of miners, ranchers, homesteaders, and all other members of the public who had a need to travel across public lands. *Southern Utah Wilderness Alliance v. Bureau of Land Mgmt.*, 425 F.3d 735, 741 (10th Cir. 2005) (hereinafter "*SUWA v. BLM*"). R.S. 2477 operated as a standing offer of a right-of-way over the public domain, and the grant could be accepted without any formal action by public authorities. *Id.*

R.S. 2477 was repealed on October 21, 1976, by FLPMA, 43 U.S.C. § 1701 *et. seq*. In repealing R.S. 2477, Congress preserved vested R.S. 2477 rights-of-way as valid existing rights and expressly directed the United States and its subordinate agencies (including the DOI, NPS, and GCNRA) to manage federal lands subject to these valid existing rights. Section 701(h) of FLPMA provides as follows: "All actions by the Secretary concerned under this Act shall be subject to valid existing rights." *Id*. § 1701, note; *see also* § 1769(a) ("Nothing in this subchapter shall have the effect of terminating any right-of-way or right of use heretofore issued, granted or permitted.").

## III.    National Park Service Regulations

NPS regulations for vehicles and traffic safety state that traffic and vehicle use within the

recreation area are governed by state law, unless specifically addressed by another section. 36 C.F.R. § 4.2. Unless NPS provides otherwise, under 36 C.F.R. § 4.2, NPS must adopt all non-conflicting state laws. 86 FR at 3805.

Routes and areas designated for off-road motor vehicle use are promulgated as special regulations subject to 36 C.F.R. § 1.5 and Executive Order 11644.

36 C.F.R. § 4.10 requires routes and areas designated for off-road motor vehicle use to be promulgated as special regulations. The Flint Trail and other roads within the Orange Cliffs Unit are not routes designated for off-road use, so no special regulation is needed. In the case of on-road use such as on the Flint Trail and other roads within the Orange Cliffs Unit, state law should govern under Section 4.2.

Executive Order 11644 allows agencies to designate areas where use of ORVs may and may not be permitted, based on protection of resources, promotion of safety of all users, and minimizing conflicts among various uses of the land. Restricting ATVs and ORVs and closing roads where vehicles are already permitted does not protect resources, since the resources would already be impacted—to the extent they are impacted at all—by permitted vehicles.

Restricting ATVs and ORVs on the Flint Trail and other roads and closing roads within the Orange Cliffs Unit does not promote safety because ATVs and ORVs are as safe and often safer than some conventional vehicles that are permitted.

Defendants' 2018 ROD made a general statement that mitigation measures were developed to avoid or minimize impacts to park resources and to confine the impacts of ATVs and ORVs to designated areas. However, this statement does not justify the ATV and ORV restrictions on roads within the Orange Cliffs Unit, because ATVs and ORVs do not create any new impacts beyond those already created by permitted conventional vehicle use in the area.

11

NPS admitted this in its 2018 ROD at 7.

Defendants' 2018 ROD included findings that on-road ATV and ORV use is not expected to severely or noticeably impact soil on roads because the roads are designed to be driven on and the soil has already been disturbed. 2018 ROD at 20.

The 2018 ROD stated that minimal impacts to wildlife and paleontological resources are expected from ATVs and ORVs compared to already-existing impacts from permitted vehicles. 2018 ROD at 23 and 28.

Defendants' 2018 ROD further found that enforcing closures of off-road areas would mitigate impacts to soil, vegetation, wildlife, and paleontological resources. 2018 ROD at 20, 21, 23, and 28. Restricting ATVs and ORVs on roads where other conventional vehicles are permitted does not mitigate impacts to resources that are already impacted—to the extent they are impacted at all—by those vehicles. Enforcing restrictions that require all vehicles, regardless of type, to stay within designated areas mitigates impacts to resources.

Because the roads within the Orange Cliffs Unit are not routes designated for off-road use, they should be governed by state law, as are all of the other roads within the recreation area; and state law permits street legal ATVs.

Federal law also requires written justification for a closure or restriction and an explanation of why less restrictive measures will not suffice. 36 C.F.R. § 1.5(c). Defendants' ORV Plan, ROD and Final Rule merely state that ORVs and street-legal ATVs will be authorized on unpaved roads except most roads in the Orange Cliffs Unit.  There is no explanation as to why they are not authorized there but are authorized elsewhere.

Executive Order 11644 allows for a temporary restriction if it is determined that ATV or ORV use is causing or will cause considerable adverse effects on specific areas or trails. ATVs

and ORVs simply do not cause any new adverse effects compared to impacts from vehicles already permitted on roads within the Orange Cliffs Unit. 2018 ROD at 20-28.

The solution to mitigating impacts to resources is to make changes if and when monitoring shows negative results. Currently, there are no negative impacts necessitating a restriction of ATVs and ORVs on roads within the Orange Cliffs Unit. The Court should therefore hold the ATV and ORV restriction and other roads closures unlawful and set them aside.

### IV.    The Wilderness Act

The Wilderness Act of 1964 was enacted "to secure for the American people of present and future generations the benefits of an enduring resource of wilderness." 16 U.S.C. § 1131(a). Management of these wilderness areas was to be done in "such manner as will leave them unimpaired for future use and enjoyment as wilderness." *Id*. The Act defines "wilderness" as "an area where the earth and its community of life are untrammeled by man, where man himself is a visitor who does not remain" and "an area of undeveloped Federal land retaining its primeval character and influence, without permanent improvement or human habitation." *Id*. § 1131(c). A qualifying area is defined as an area that:

> (1) generally appears to have been affected primarily by the forces of nature, with the imprint of man's work substantially unnoticeable; (2) has outstanding opportunities for solitude or a primitive and unconfined type of recreation; (3) has at least five thousand acres of land or is of sufficient size as to make practicable its preservation and use in an unimpaired condition; and (4) may also contain ecological, geological, or other features of scientific, education, scenic, or historical value.

*Id*. To designate lands as "wilderness," the Secretary of DOI or Department of Agriculture must first make a recommendation to the President that an area of the public lands should be added to the National Wilderness Preservation System. *Id*. § 1132(a)-(c). The President then makes a recommendation to Congress, which reserved to itself the power to designate wilderness. *Id*.

Specifically, the Wilderness Act states that "no Federal lands shall be designated as 'wilderness areas' except as provided for in this chapter or by a subsequent Act." *Id*. § 1131(a).

### V. Administrative Procedures Act

Congress enacted the APA to standardize the way federal administrative agencies propose and establish rules and regulations. The APA also establishes a process for judicial review of agency decisions. The APA authorizes the setting aside of agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; in excess of statutory jurisdiction, authority, or limitations; or without observance of procedures required by law, and unwarranted or unsupported by the facts. 5 U.S.C. § 706(2). There must be a "rational connection between the facts found and the choice made." *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 56 (1983).

### A. Rulemaking

Rulemaking procedures are clearly laid out in the APA and require both notice and the opportunity to comment. 5 U.S.C. § 553. Notice of proposed rulemaking is to be published in the Federal Register and must include "(1) a statement of the time, place, and nature of the public rule making proceedings; (2) reference to the legal authority under which the rule is proposed; and (3) either the terms or substance of the proposed rule or a description of the subjects and issues involved." *Id.* at § 553(b). After providing notice, an agency must "give interested persons an opportunity to participate in the rulemaking through submission of written data, views, or arguments with or without opportunity for oral presentation." *Id.* at § 553(c).Except as otherwise required by statute, the APA provides an exception to the notice and comment requirements for "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice." *Id.* at § 553(b)(3)(A). Courts will overturn a rule

14

purporting to exist under this exception if it was promulgated pursuant to a direct delegation of legislative power by Congress or "if it changes existing law, policy or practice." *Rocky Mountain Helicopters, Inc. v. F.A.A.*, 971 F.2d 544, 546 (10th Cir. 1992).

### B. Judicial Review

The APA also establishes a procedure for judicial review for those who are suffering a legal wrong as the result of a final agency action and have no other adequate remedy. *Id.* at § 704. The reviewing court may decide "all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action." *Id.* at § 706. The court shall, among other things, "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right . . . [or] without observance of procedure required by law." *Id.* at § 706(2)(A),(C)-(D).

### STATEMENT OF FACTS

GCNRA was established in 1972 and encompasses 1,254,306 acres in northern Arizona and southeastern Utah, including portions of Garfield, Kane, San Juan, and Wayne Counties in Utah. GCNRA adjoins approximately 9.3 million acres of federal lands administered by the BLM.  Dkt 1, Compl. at ¶ 27.

In 2005, Friends of the Earth, the National Parks Conservation Association, and Wildlands CPR challenged NPS in federal court over its alleged failure to promulgate a special regulation to designate off-road use areas throughout GCNRA as required by Executive Orders 11644 and 11989 and 36 C.F.R. § 4.10(b). *See Friends of the Earth, Bluewater Network Div., et al. v. U.S. Dep't of the Interior, et al.*, Case 1:05-cv-02302-RCL. The litigation was resolved

under a settlement agreement dated May 12, 2008, which required GCNRA to prepare an ORV plan and promulgate a regulation for off-road vehicle use. The challenged  ORV Plan and ROD in this case were prepared under the terms of the May 2008 settlement agreement. Dkt 1, Compl. at ¶¶ 29-30.

The public scoping process to manage ORV and ATV use in GCNRA began in 2007. The NPS received public comments for the Draft EIS (released in January 2014) and the Final EIS (released in January 2017). In December 2010, the State submitted comments as a cooperating agency for the ORVMP/EIS scoping. *See* letter from John Harja, Director of Utah Public Lands Policy Coordinating Office, to Stan Austin, Superintendent of GCNRA, Glen Canyon NRA Off-Road Vehicle Management Plan (Dec. 7, 2010). A copy of this letter is attached as EXHIBIT E to Plaintiffs' Complaint.

NPS released the ORVMP/Draft EIS (DEIS) for GCNRA in January 2014. The State provided comments on the ORVMP/DEIS in March 2014. *See* Letter from Kathleen Clarke, Director of Utah Public Lands Policy Coordinating Office, to Teri Tucker, Chief of Planning and Compliance for GCNRA, ORVMP/DEIS for GCNRA, (March 4, 2014). A copy of this letter is attached as EXHIBIT F to Plaintiffs' Complaint. In the letter, the State expressed concern that preferred Alternative E made a distinction between traditional registered vehicles and motorized ATV vehicles (including street legal ATVs). The State advocated for a multiple use model that would reduce confusing vehicle restrictions and prohibitions and allow flexibility in light of changing Utah law regarding street legal ATVs.

Since 2014, the Utah Traffic Code has been amended to allow for more street legal ATV use, with some exceptions such as on interstate freeways, highways with a speed limit of 50

miles per hour or more, or areas that are not open to motor vehicle use. Utah Code Ann. § 41-6a-1509 (2018); Dkt 1, Compl. at ¶ 33.

In June 2016, the State submitted comments on the ORVMP/FEIS. *See* Letter from Kathleen Clarke to Billy Shott, Acting Superintendent of GCNRA, GCNRA ORVMP/FEIS, Chapter 1, and Chapter 3 (June 15, 2016). A copy of this letter is attached as EXHIBIT G to Plaintiffs' Complaint. The State reiterated its position that the ORVMP should follow the state distinction between street legal and non-street legal ATVs, and not the NPS's artificial distinction between conventional motor vehicles and non-conventional motor vehicles (which include street legal ATVs).

In January 2017, the State provided additional comments on the ORVMP/FEIS. *See* Letter from Kathleen Clarke to Sue Masica, Regional Director, and Billy Shott, GCNRA ORVMP FEIS (Jan. 30, 2017). A copy of this letter is attached as EXHIBIT H to Plaintiffs' Complaint. The State's comments focused on two roads, the Flint Trail (Garfield County Road G1600 / NRA road 633) and Garfield County Road G15000 / NRA road 730. The State expressed the position that the Preferred Alternative's restriction of ORVs on those two roads is inconsistent with "the enabling legislation, legislative intent, as well as the general management plan of the NRA." Without sufficient data indicating that the ORV restrictions were necessary, the State contended that the restrictions were arbitrary and capricious. Dkt 1, Compl. at ¶ 35.

The State made similar comments on the GCNRA Off-Road Vehicle Travel Plan Special Regulation in April 2018. *See* Letter from Kathleen Clarke to Billy Shott, Special Regulations of the NPS; GCNRA; Motor Vehicles: Proposed Rule (April 30, 2018). A copy of this letter is attached as EXHIBIT I to Plaintiffs' Complaint. Dkt 1, Compl. at ¶ 36.

Over the course of an eight-year period, from January 2013 to July 2020, Garfield County submitted numerous letters and comments to the GCNRA and NPS expressing objections and concerns similar to those set forth in the State's comment letters outlined above. Copies of nine letters from Garfield County to the GCNRA and NPS are attached as EXHIBIT J to Plaintiffs' Complaint. Dkt 1, Compl. at ¶ 37.

Wayne County also submitted letters and comments to the GCNRA and NPS, joining in the objections and concerns expressed by Garfield County. Copies of letters and comments from Wayne County are attached as EXHIBIT K to Plaintiffs' Complaint. Dkt 1, Compl. at ¶ 38.

Congressman Chris Stewart (R. Utah CD2) and Senators Mike Lee (R. Utah) and Mitt Romney (R. Utah) also submitted comments and concerns to the DOI and GCNRA. Copies of letters from Congressman Stewart and Senators Lee and Romney are attached as EXHIBIT L to Plaintiffs' Complaint.  Dkt 1, Compl. at ¶ 39.

The ROD for the Off-Road Vehicle Management Plan / Final Environmental Impact Statement for GCNRA was signed on August 15, 2018. A copy of the 2018 ROD, hereinafter referred to as the "2018 ROD," is attached as EXHIBIT M to Plaintiffs' Complaint. Dkt 1, Compl. at ¶ 40.

On January 15, 2021, Defendants approved and adopted the ORV Plan, ROD, and Final Rule challenged in the present action. 36 C.F.R. § 7.70(f), 86 Fed. Reg. 3804 (Jan. 15, 2021). Pursuant to the ORV Plan, ROD and Final Rule, street-legal ATVs and ORVs are prohibited on all roads in the Orange Cliffs Unit with two exceptions: (1) The Flint Trail is open to street-legal ATVs and ORVs south of the road's intersection with Poison Springs/North Hatch Canyon Road, Garfield County B Road 0011D; and (2) the Cove Road, Garfield County D Road 16050, is open to street-legal ATVs and ORVs. Dkt 1, Compl. at ¶¶ 41-42.

The ORV Plan, ROD and Final Rule failed to recognize and therefore closed three Wayne and Garfield County D Roads, including: (1) High Spur Road, Wayne County D Road 120_1; (2) Gordon Flat Road, Wayne County D Road 114_19; and (3) Sewing Machine Road, Garfield County D Road GC16052. *Id.* at ¶ 43.

The ATV and ORV prohibitions in Defendants' ORV Plan, ROD and Final Rule have also resulted in *de facto* prohibition of ATV and ORV use on (1) Spur Trail Road, Wayne County D Road 120_5, which lies entirely on BLM land west of the GCNRA but can only be accessed from Spur Road within the GCNRA; and (2) Windy Peak Road, Wayne County B Road 120A, which lies entirely on BLM land west of the GCNRA but can only be accessed from Spur Road within the GCNRA. *Id*. at ¶ 44.

Two environmental groups, the National Parks Conservation Association ("NPCA") and the Southern Utah Wilderness Alliance ("SUWA") challenged Defendants' January 15, 2021, ORV Plan, ROD, and Final Rule in separate legal actions in Federal District Court in Washington D.C. *See NPCA v. DOI, et. al*. 1:21-cv-171; *SUWA v. DOI, et. al*., 1:23-cv-693. The environmental groups alleged that DOI and NPS violated federal law and argued that ATVs and ORVs should be prohibited in the entire GCNRA. Dkt 1, Compl. at ¶ 45.

The two cases were consolidated and ultimately settled. Both environmental groups and Defendants submitted to the court a settlement agreement on April 9, 2024, pursuant to which Defendants agreed, among other things, to revise the ORV Plan, ROD and Final Rule and consider an additional prohibition of the use of street-legal ATVs and ORVs on an 8-mile segment of the Flint Trail within the Orange Cliffs Unit. *Id.* At ¶ 46. The parties also agreed to eliminate the Superintendent's ability to designate the Flint Trail for street-legal ATV and ORV use. *Id*.

Plaintiffs were not parties to and are not bound by the settlement agreement in the D.C. District Court cases. Plaintiffs opposed the settlement. *Id*. at ¶ 47.

Federal law for NPS states that traffic and vehicle use within a park area is governed by state law, unless specifically addressed by other regulations, and violating a provision of state law is prohibited. 36 C.F.R. § 4.2 (2018). State law allows for street-legal ATVs on roads such as these, Utah Code Ann. § 41-6a-1509, but Defendants' ORV Plan, ROD, and Final Rule prohibit them in most of the Orange Cliffs Unit. *Id*. at ¶ 48.

Federal law also requires that the Superintendent provide a written determination setting forth reasons for a restriction, condition, public use limit, or closure, and an explanation of why less restrictive measures will not suffice. 36 C.F.R. § 1.5(c) (2018). Defendants have not given any reasonable explanation for the restriction of ORVs on roads in the Orange Cliffs Unit. *Id*. at ¶ 49.

Executive Order 11644 defines "off-road vehicle" as "any motorized vehicle designed for or capable of cross-country travel on or immediately over land, water, sand, snow, ice, marsh swampland, or other natural terrain." Executive Order 11644 also directed each agency head to develop and issue regulations and administrative instructions to provide for administrative designation of the areas on public lands where ORVs may be permitted, based on "the protection of the resources of the public lands, promotion of the safety of all users of those lands, and minimization of conflicts among the various uses of those lands." *Id*. at ¶¶ 50-52.

In Utah, ATVs can be street legal if they meet the definition and requirements in Utah Code Ann. § 41-6a-1509 (2018). *Id*. at ¶ 53.

## STANDARD OF REVIEW

Plaintiffs' claims arise under the APA, 5 U.S.C. § 702. Under the APA, 5 U.S.C. § 706(2), a court must:

> (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
> (A) arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law;
> (B) contrary to constitutional right, power, privilege, or immunity;
> (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;
> (D) without observance of procedure required by law; . . .
> (F) unwarranted by the facts to the extent that the facts are subject to trial do novo by the reviewing court.

An action is arbitrary and capricious,

> if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

"An agency's decision is entitled to a presumption of regularity, 'but that presumption is not to shield the agency's action from a thorough, probing, in-depth review.'" *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1574 (10th Cir. 1994) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971)) (alteration marks omitted). To survive judicial review under the arbitrary and capricious standard, an agency must "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). This review "focuses on the rationality of an agency's decision-making process rather than the rationality of the actual decision." *Colorado Wild, Heartwood v. U.S. Forest Serv.*, 435 F.3d 1204, 1213 (10th Cir. 2006).

## ARGUMENT

Defendants violated the Utah Enabling Act, federal statutory and case law, and the Fifth Amendment to the United States Constitution by approving and implementing the Glen Canyon Off-Road Vehicle Management Plan/Final Environmental Impact Statement ("ORV Plan"), the associated Record of Decision ("ROD"), and the adoption of the ORV Plan via special regulation, 36 C.F.R. § 7.70(f), 86 Fed. Reg. 3804 (Jan. 15, 2021).

First, Defendants' ATV and ORV restrictions and road closures deprive the State of Utah and SITLA of legally protected access to state-owned Trust Lands administered by SITLA, contrary to court precedent. Second, in adopting and implementing ATV and ORV restrictions and road closures, Defendants acted arbitrarily and capriciously in violation of the APA and NPS regulations. Third, Defendants violated federal statutes and the APA by implementing *de facto* wilderness management on non-Wilderness lands. Fourth, Defendants' ATV and ORV restrictions and road closures violate State Law. Fifth, Defendants violated Federal Law and the Fifth Amendment to the Constitution of the United States by failing to consider rights-of-way for which the State and County hold vested title interests, by closing public motorized access to roads subject to those rights-of-way, and thereby unlawfully taking property of the State and Counties.

## I.   Defendants' ATV and ORV Restrictions and Road Closures Eliminate and Restrict Access to SITLA Parcels in Violation of Utah's Right to Access Trust Lands Under the Utah Enabling Act and Federal Case Law.

In 1894, Congress passed the Utah Enabling Act which admitted Utah into the Union as a state. *See* Utah Enabling Act, ch. 138, 28 Stat. 107 (1894). Case law from the Tenth Circuit and Utah Federal District Courts has called the Utah Enabling Act a "solemn bilateral agreement,"

and a "contract, with bargained-for consideration exchanged between two governments." *Utah v. Kleppe*, 586 F.2d 756, 758 (10th Cir. 1978); *State of Utah v. Andrus*, 486 F. Supp. 995, 1001 (D. Utah 1979). "In return for receiving the federal lands Utah disclaimed all interest in the remainder of the public domain, agreed to forever hold federal lands immune from taxation, and agreed to hold the granted lands, or the proceeds therefrom, in trust as a common school fund." *State of Utah v. Andrus*, 486 F. Supp. 995, 1001 (D. Utah 1979). Accordingly, "Utah [has] a right of access to state school trust lands." *Id*. at 1011.

In *Andrus*, the Court held that although Utah's access rights to state school trust lands are subject to federal regulation, such regulations cannot prohibit access or be so restrictive as to make economic development "competitively unprofitable," as such an outcome could "constitute a taking." *Id*. at 1011. This applies even when BLM issues regulations to prevent impairment of wilderness characteristics. *Id.* This prescient ruling foreshadowed the Supreme Court's later holding in *Lucas v. South Carolina Coastal Council* that regulations which "deprive[] land of all economically beneficial use" constitute a *per se* taking. 505 U.S. 1003, 1027 (1992).

Pursuant to the Utah Constitution, the State of Utah owns all property interests acquired from the United States at or after the time of statehood and holds certain lands in trust for the benefit of its public-school systems. Utah Const. art. XX. The State of Utah holds fee title to a number of sections of Trust Lands near the Orange Cliffs Unit that are administered and managed by SITLA. Numerous roads within the Orange Cliffs Unit provide transportation and access to these Trust Lands and contribute to the financial viability of these parcels for the benefit of the public-school systems in the state.

Defendants' ATV and ORV prohibitions result in a *de facto* prohibition of ATV and ORV use on Windy Peak Road, Wayne County B Road 120A, which lies entirely on BLM

land west of the GCNRA but can only be accessed from Spur Road within the GCNRA. Windy Peak Road provides exclusive access to a parcel of land owned by the State of Utah and managed by SITLA: Section 32 of Township 27 South, Range 16 East. Dkt 1, Compl. at ¶ 2.

Defendants' ATV and ORV prohibitions also result in a *de facto* prohibition of ATV and ORV use on Spur Trail Road, Wayne County D Road 120_5, which lies entirely on BLM land west of the GCNRA but can only be accessed from Spur Road within the GCNRA. Spur Trail Road provides exclusive access to a parcel of land owned by the State of Utah and managed by SITLA: Section 36 of Township 26 South, Range 16 East in Emery County. *Id.* at ¶ 3.

Defendants' ORV Plan, ROD and Final Rule completely fail to recognize and therefore render closed three Wayne and Garfield County D Roads, including: (1) High Spur Road, Wayne County D Road 120_1; (2) Gordon Flat Road, Wayne County D Road 114_19; and (3) Sewing Machine Road, Garfield County D Road GC16052. *Id.* at ¶ 4.

High Spur Road and Gordon Flat Road provide exclusive access to two sections of land owned by the State of Utah and managed by SITLA: (1) Section 32 in Township 28 South, Range 13 East; and (2) Section 16 in Township 30 South, Range 16 East. The closure of these roads deprives Plaintiffs of access to these state-owned lands. *Id.* at ¶ 5.

Plaintiffs SITLA and Wayne County are working toward leasing and opening parcels of land owned by the State of Utah and managed by SITLA in Section 16 of Township 30 South, Range 16 East to be used as sand and gravel pits for road maintenance purposes in eastern Wayne and Garfield Counties. To this end, SITLA and Wayne County have issued and executed three Sand and Gravel Permits — 699, 701, and 702 — copies of which are

attached to Plaintiffs' Complaint as EXHIBIT C. *Id.* at ¶ 6. Wayne and Garfield Counties maintain many roads in the area, including roads in the GCNRA, and nearby sand and gravel pits would provide a needed source of road material, eliminating the extremely high cost of trucking in material from the distant western areas of the counties, as well as providing revenue for Utah schools. *Id.* The only means of access for the proposed sand and gravel pits would be from Roost Road and Gordon Flat Road in the GCNRA. *Id.* at ¶ 7.

Sewing Machine Road continues west of the GCNRA in Section 33 of Township 32 South, Range 15 East, and is used by cattle ranchers to access a large stock pond. The Road also provides the only potential access to two nearby sections of land owned by the State of Utah and managed by SITLA just west of the boundary of the GCNRA. *Id.* at ¶ 8.

These restrictions and closures render the economic development of the affected parcels competitively unprofitable both to the State as well as its lessees. Such restrictions violate Utah's right to access its Trust Lands and constitute a taking under both *Andrus* and *Lucas*. Additionally, granting the State administrative access to the now-closed roads would not provide the access rights owed under the Utah Enabling Act. These roads are primarily maintained through public use. Administrative use alone is insufficient to keep the roads in passable condition.

The marketability and value of the affected Trust Lands will be significantly reduced, diminishing their per-acre value. The closure of access roads severely limits the potential uses of these Trust Lands, thereby reducing their attractiveness to potential buyers or lessees. Continued access to these Trust Lands is paramount for fulfilling the intent of the original land grant from the United States.

In addition to the valuation loss, SITLA has very limited budgets for road maintenance.

This is by design, to maximize disbursements of revenue. Therefore, it is imperative for the State, SITLA, and their Trust Lands beneficiaries that roads leading to SITLA Trust Lands be open to the public; this allows SITLA to partner with the Wayne and Garfield County Road Departments and others to improve or maintain the roads when needed.

**II.     Defendants Acted Arbitrarily and Capriciously in Violation of the APA and Federal Law and Regulations in Adopting and Implementing ATV and ORV Restrictions and Road Closures in the Orange Cliffs Unit.**

The APA authorizes the setting aside of agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; in excess of statutory jurisdiction, authority, or limitations; without observance of procedures required by law, and unwarranted or unsupported by the facts. 5 U.S.C. 706(2). There must be a "rational connection between the facts found and the choice made." *See Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 56 (1983).

The specific facts underlying Defendants' ATV and ORV restrictions and road closures reveals that Defendants acted arbitrarily and capriciously. As stated above, Defendants completely failed to recognize, and therefore closed, three Wayne and Garfield County Class D Roads. There is nothing anywhere in the ORV Plan, ROD or Final Rule that would support the closure of these roads. There is likewise nothing in the Administrative Record of this case to support the closures. Failing an explanation, Defendants' road closures are arbitrary and capricious.

Defendants' ATV and ORV restrictions are likewise arbitrary and capricious and violate NPS regulations. Defendants are required by law to provide a written determination setting forth reasons for a restriction, condition, public use limit, or closure, and an explanation of why less

26

restrictive measures will not suffice. 36 C.F.R. § 1.5(c) (2018). Defendants have not given any reasonable explanation for the restriction of ATVs and ORVs on roads in the Orange Cliffs Unit.

Plaintiffs have given Defendants input dating back to 2010 explaining in detail why the ATV and ORV restrictions are arbitrary and capricious, to no avail. *See* Dkt 1, Compl., EXHIBITS E-M. In a letter dated January 2017, the State provided additional comments on the ORVMP/FEIS. *See* Letter from Kathleen Clarke to Sue Masica, Regional Director, and Billy Shott, GCNRA ORVMP FEIS (Jan. 30, 2017). A copy of this letter is attached as EXHIBIT H to Plaintiffs' Complaint. The State's comments focused on two roads, the Flint Trail (Garfield County Road G1600 / NRA road 633) and Garfield County Road G15000 / NRA road 730. The State expressed the position that the Preferred Alternative's restriction of ORVs on those two roads was inconsistent with "the enabling legislation, legislative intent, as well as the general management plan of the NRA." Without sufficient data indicating that the ORV restrictions were necessary, the State contended that the restrictions were arbitrary and capricious. The Administrative Record in this case does nothing to address or refute the State's criticism. During a 2015 Orange Cliffs Unit field trip, Garfield County observed that ATVs with low-pressure tires actually cause less impact to slickrock grades than the Jeep Rubicon traveling ahead, which spun rocks and slid across slopes. *See* Dkt 1, Compl., Ex. J.

NPS regulations for vehicles and traffic safety state that traffic and vehicle use within the recreation area are governed by state law, unless specifically addressed by another section. 36 C.F.R. § 4.2. Unless NPS provides otherwise, under 36 C.F.R. § 4.2, NPS must adopt non-conflicting state laws. 86 FR at 3805.

Routes and areas designated for off-road motor vehicle use are promulgated as special regulations subject to 36 C.F.R. § 1.5 and Executive Order 11644.

36 C.F.R. § 4.10 requires routes and areas designated for off-road motor vehicle use to be promulgated as special regulations. The Flint Trail and other roads within the Orange Cliffs Unit are not routes designated for off-road use, so no special regulation is needed. In the case of on-road use such as on the Flint Trail and other roads within the Orange Cliffs Unit, state law governs pursuant to Section 4.2.

Executive Order 11644 allows agencies to designate areas where use of ORVs may and may not be permitted, based on protection of resources, promotion of safety of all users, and minimization of conflicts among various uses of the land. Restricting ATVs and ORVs and closing roads where vehicles are already permitted does not protect resources, since the resources would already have been impacted—to the extent they are impacted at all—by permitted vehicles.

Restricting ATVs and ORVs on the Flint Trail and other roads and closing roads within the Orange Cliffs Unit does not promote safety because ATVs and ORVs are as safe and often safer than many of the conventional vehicles that are permitted.

Defendants' 2018 ROD made a general statement that mitigation measures were developed to avoid or minimize impacts to park resources and to confine the impacts of ATVs and ORVs to designated areas. However, this statement does not justify the ATV and ORV restrictions on roads within the Orange Cliffs Unit, because ATVs and ORVs do not create any new impacts beyond those already in existence due to other conventional vehicles already allowed. NPS admitted as much in its 2018 ROD at 7.

Defendants' 2018 ROD included findings that on-road ATV and ORV use is not expected to severely or noticeably impact soil on roads because the roads are designed to be driven on and said soil has already been disturbed. 2018 ROD at 20.

The 2018 ROD stated that minimal impacts to wildlife and paleontological resources are expected from ATVs and ORVs compared to already-existing impacts from permitted vehicles. 2018 ROD at 23,28.

Defendants' 2018 ROD further found that enforcing closures of off-road areas would mitigate impacts to soil, vegetation, wildlife, and paleontological resources. 2018 ROD at 20, 21, 23, 28. Restricting ATVs and ORVs on roads where other conventional vehicles are permitted does not mitigate impacts to resources that are already impacted—to the extent that resources are impacted at all—by those vehicles. Enforcing restrictions that require all vehicles, regardless of type, to stay within designated areas more effectively mitigates impacts to resources than restrictions on specific vehicle types.

Because the roads within the Orange Cliffs Unit are not routes designated for off-road use, they should be governed by state law like all the other roads within the recreation area; and Utah law permits street legal ATVs.

Federal law also requires written justification for a closure or restriction and an explanation of why less restrictive measures will not suffice. 36 C.F.R. § 1.5(c). Defendants' ORV Plan, ROD and Final Rule merely state that ORVs and street-legal ATVs will be authorized on unpaved roads except for most roads in the Orange Cliffs Unit. There is no explanation given as to why they are not authorized there but are authorized elsewhere.

Executive Order 11644 allows for a temporary restriction if it is determined that ATV or ORV use is causing or will cause considerable adverse effects on particular areas or trails. ATVs and ORVs do not cause any new adverse effects compared to impacts from vehicles already permitted on roads within the Orange Cliffs Unit, as all vehicles, regardless of type, would be traveling the existing disturbed surface of the roads. 2018 ROD at 20-28.

The solution to mitigating impacts to resources is to make changes if and when monitoring shows negative results. There is no evidence of negative impacts necessitating a restriction of ATVs and ORVs on roads within the Orange Cliffs Unit. The Court should therefore hold the ATV and ORV restrictions and other roads closures unlawful and set them aside.

### III.    Defendants Violated Federal Law by Implementing *De Facto* Wilderness Management on Non-Wilderness Lands.

Congress reserved for itself the sole authority to designate wilderness.  16 U.S.C. § 1131(a).  Congress granted the Secretary of DOI specific and limited authority to identify lands meeting the definition of wilderness and to study those lands to make recommendations to Congress for wilderness designations.  43 U.S.C. § 1782.  This wilderness inventory and study program expired in 1993 and has not been expanded or reauthorized by Congress since that time. DOI and its agencies lack the legal authority to implement wilderness-type management.

The only conceivable, albeit unstated, justification for the closure of roads to ORV use in the Orange Cliffs Unit is an abstract concern that such ORV use will somehow cause damage to the wilderness character of the surrounding land within GCNRA.  Defendants' ATV and ORV restrictions and road closures do not use the term "wilderness" to describe the management of the Orange Cliffs Unit in the GCNRA, but the practical effect of Defendants' decision is to create wilderness-type management outside the bounds of a wilderness designation authorized by Congress.

For example, the Administrative Record (AR – NPS0000245) cites statistics relating to off-road use violations, noting tire tracks observed where they should not be, but there is nothing to differentiate between Conventional and ATV or OHV use.  Jeeps and other conventional vehicles

are just as capable of illegal off-road use as street legal ATVs and OHVs. The AR references only one citation in a number of years and does not indicate what kind of vehicle was involved. *Id.* The problem is one of enforcement and has nothing to do with the type of vehicle involved. Street legal ATVs and OHVs actually do much less damage and are much safer on the sometimes-difficult Orange Cliffs roads than most conventional vehicles. Even a Jeep with high clearance and a short wheelbase cannot navigate the hairpin turns of the Flint Trail without making a three- or four-point turn and leaving tire track disturbance off the road. A Street Legal ATV or OHV can do so much more safely, with far less damage to the terrain on either side of the road. Also, nothing in the AR indicates that soundscape noise is any greater for Street-legal ATVS and OHVs than Conventional 4x4 vehicles. *Id.* Environmental wilderness advocates have an unfounded prejudice against such vehicles, and the NRA and Park Service have allowed them to have undue influence in the TMP process.

The Administrative Record specifically states that "the presence of illegal off-road tracks, by both ATV and conventional 4-wheel-drive vehicles, are routinely observed during ranger patrols." AR – NPS0000213. Again, there is nothing in the Administrative Record to substantiate a distinction between conventional vehicles and street legal ATVs and OHVs. There is nothing to suggest that the wilderness characteristics of the NRA are better protected by such a distinction.

Plaintiffs seek a judicial determination that by prohibiting the use of ATVs and ORVs and closing roads within the Orange Cliffs Unit, Defendants have engaged in unlawful *de facto* wilderness management. A favorable decision from this Court will redress Plaintiffs' legal injuries and leave intact key components of land use and transportation plans. Such a determination and permanent injunction will leave Utah wilderness decisions where they belong, with the United States Congress.

IV.    **Defendants' ATV and ORV Restrictions Violate State Law**

NPS regulations state that traffic and vehicle use within park areas are governed by state law unless specifically addressed by other regulations, and that violating a provision of state law is prohibited. 36 C.F.R. § 4.2 (2018). This applies to state law that is "now or may later be in effect." 36 C.F.R. § 4.2(a).

State law provides for street legal off-road vehicles on most roads in Utah, Utah Code Ann. § 41-6a-1509 (2018), including the roads at issue within the Orange Cliffs Unit.

Defendants' ORV Plan, ROD and Final Rule recognize that ATVs are legal to operate on a road or highway (excluding an interstate freeway or limited access highway) if they meet the "street legal" definition under the Utah Code. *See* 86 FR 3805.

Defendants' ORV Plan, ROD and Final Rule also recognize that NPS adopts non-conflicting state laws pursuant to 36 C.F.R. § 4.2. *Id.*. The traffic laws within the GCNRA do not conflict with state law. Defendants' ORV Plan, ROD and Final Rule provide that the speed limit on unpaved roads is 25 mph or posted. *Id.* at 3807. NPS regulations provide speed limits for park areas, all under 50 mph. 36 C.F.R. § 4.21. The Utah Code states that a street-legal ATV cannot exceed 50 mph. Utah Code Ann. § 41-6a-1509(4)(a) (2018). There is no conflict between the federal law, the ROD, and state law, as 25 mph is well within the State speed limit of 50 mph for ATVs.

NPS regulations prohibit the agency from violating a provision of state law. Restricting ORVs on roads in the Orange Cliffs Unit violates state law because no special regulation is needed on well-traveled park roads that are already used by permitted vehicles. The Court should therefore hold the ORV restriction unlawful and set it aside.

V.    **Defendants Violated Federal Law and the Fifth Amendment to the United States Constitution by Unlawfully Closing Roads to Which the State of Utah and Wayne and Garfield Counties Hold Vested R.S. 2477 Rights-of-Way, and by Failing to Even Consider Such Rights-of-Way.**

Congress passed R.S. 2477 in 1866, granting a general "right-of-way for the construction of highways" over unreserved federal public lands. Furthermore, the Tenth Circuit has held that "title to [R.S. 2477] rights of way pass[] independently of any action or approval on the part of the BLM." *SUWA v. BLM*, 425 F.3d 735, 754 (10th Cir. 2005). The BLM's own manual once contained a provision which read, "When the history of a road is unknown or questionable, its existence in a condition suitable for public use is evidence that construction sufficient to cause a grant under RS 2477 has taken place." *Sierra Club v. Hodel*, 675 F. Supp. 594, 605 (D. Utah 1987) (quoting BLM Manual, Rel. 2-229, June 30, 1986).

Congress repealed R.S. 2477 in 1976 with the passage of FLPMA. However, Congress explicitly preserved R.S. 2477 roads, stating "[n]othing in this Act, or in any amendment made by this Act, shall be construed as terminating any valid . . . right-of-way, or other land use right or authorization existing on the date of approval of this Act." Fed. Land Pol'y & Mgmt. Act of 1976, Pub. L. No. 94–579, §§ 501. § 701(a).

At issue in the current case are rights-of-way granted under R.S. 2477 which Utah and its counties obtained through the construction and maintenance of these roads prior to the creation of the GCNRA. To this point, Defendants have asserted that their ATV and ORV restrictions and closures of R.S. 2477 roads do not constitute a dispute of Utah's vested R.S. 2477 rights. In doing so, Defendants have treated Utah as a non-holder of vested R.S. 2477 rights and required that, to establish itself as a holder, Utah must bring action under the Quiet Title Act.

However, this practice has recently been condemned by this Court in the case of *Kane County v. U.S.,* 2:10-cv-01073-CW, Dkt. 792 (D. Ut. Aug. 9, 2024) (hereinafter, "Kane County Decision"). The Kane County Decision was issued as part of an ongoing suit between Kane County and the United States government regarding the closure of R.S. 2477 roads in the Grand Staircase-Escalante National Monument. Under its management authority over the Monument, the BLM developed a Monument Plan which set forth a "transportation system" which closed and otherwise attempted to manage roads within the Monument, many of which were subject to vested R.S. 2477 rights.

For example, in the case of the Hole-in-the-Rock Road, BLM refused to allow Kane County to improve the road, despite acknowledging the need for improvements, because it refused to recognize or treat Kane County as a valid R.S. 2477 holder until those rights had been adjudicated. Kane County sued, and the BLM attempted to have the suit dismissed for a lack of title dispute, claiming that it neither admitted nor denied Kane County's title.

The *Kane County* decision rejected the BLM's motion for dismissal and held that "imposing a mandate of adjudicated title is contrary to law and the United States' authority." *Id.* at 60. The Court reasoned that R.S. 2477 "imposed no burden on [Utah] to prove to the United States [its] status as [a] holder before the State . . . could exercise [its] rights. Those who were holders on October 20, 1976, continued to be holders when Congress passed FLPMA the following day. . . Congress also imposed no requirements on the State or counties to prove up their status before a court if they wanted to continue to be treated as holders." *Id.* at 27.

Additionally, in response to the BLM's assertion that its road closures did not constitute a title dispute, the Court held that, until a title dispute arises, "the United States has an obligation to continue allowing the State and counties to exercise their vested property rights without

interference." *Id.* at 32. Such vested rights include the rights to maintenance and management of R.S. 2477 roads. *Id.* at 34-35.

This case likewise deals with the violation of vested R.S. 2477 rights. The fact that the road restrictions and closures are the result of a Management Plan rather than a Monument Plan is immaterial. In both cases, federal agencies have disregarded vested R.S. 2477 rights using the self-contradictory rationale that it can at once deny Utah its management and maintenance rights under R.S. 2477 while also refusing to officially dispute those very rights. In both cases, Defendants have asserted that the State carries the burden of proving its R.S. 2477 rights through adjudication. However, The Kane County Decision clearly rejects this rationale and holds R.S. 2477 rights are self-executing, vested, and valid until such time as the United States chooses to challenge those rights under the Quiet Title Act. As such, "unless the United States disputes [Utah's] title, it has an obligation to treat the State . . . in the same manner as it did prior to [the passage of FLPMA], for the roads at issue." *Id*. at 29.

The State of Utah, Wayne County, and Garfield County are joint owners of R.S. 2477 rights-of-way within the Counties. Utah Code Ann. 72-5-302(2) (Supp. 2011);Utah Code Ann. § 72-5-103(2)(b) (2004); Utah Code Ann. §§ 72-3-103(3), 105(3) (2004). The State, Wayne County, and Garfield County hold valid existing R.S. 2477 right-of-way claims to roads within the Orange Cliffs Unit of GCNRA, which include rights-of-way for the Roads listed in the Complaint in this action in ¶¶ 1-6, which are currently the subject of quiet title actions before this court in *Wayne County et. al. v. U.S.A. et. al.* 2:12-cv-00434, and *Garfield County, et. al. v. U.S.A. et. al*. 2:11-cv-01045.

For the reasons articulated above, Defendants' ATV and ORV restrictions and closures violate Utah's vested R.S. 2477 rights. Said rights are self-executing and fully vested according

to the terms of R.S. 2477, and any requirement to establish those rights via adjudication is unlawful. The burden falls on Defendants to dispute those rights. Until that time, Utah's rights to manage and maintain these roads may not be infringed.

NEPA requires federal agencies to take a "hard look" at the environmental consequences of a federal action warranting NEPA analysis. During the development of Defendants' ORV Plan, the State and Counties asked Defendants to consider the impacts of road closures on their vested rights under R.S. 2477. Despite these requests, Defendants declined to even consider these impacts. Their failure to consider how its road closures would impact the vested rights of the State and Counties violates NEPA's "hard look" standard.

The ATV and ORV restrictions and road closures in the Orange Cliffs Unit that are subject to R.S. 2477 rights-of-way held by the State and Counties, and that have the status of vested real property rights, also constitute a taking of property in violation of the Fifth Amendment to the United States Constitution.

## CONCLUSION AND REQUEST FOR RELIEF

For the foregoing reasons, the Court should declare that Defendants violated the APA, Federal Law, State Law and the Fifth Amendment. At a minimum, the Court should vacate the agency's decision as arbitrary, capricious, and contrary to law in violation of the APA, 5 U.S.C. § 706.

Respectfully submitted this 5th day of January 2026.


/s/*Roger R. Fairbanks*
Roger R. Fairbanks
Kathy A.F. Davis
K. Tess Davis
Attorneys for Plaintiffs
State of Utah *et al.*

## CERTIFICATE OF SERVICE

I certify that on this 5th day of January 2026, the undersigned electronically filed the foregoing OPENING BRIEF OF PLAINTIFFS with the Clerk of the Court using the CM/ECF system which will send notification of this filing to all counsel of record.


/s/ *Roger R. Fairbanks*
Roger R. Fairbanks
Assistant Attorney General